IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 23, 2008 Session

## REGIONS FINANCIAL CORPORATION, a Successor to UNION PLANTERS CORPORATION AND SUBSIDIARIES v. MARSH USA, INC., ET AL.

Direct Appeal from the Circuit Court for Shelby County
No. CT-000906-06      Robert L. Childers, Judge

No. W2008-00323-COA-R3-CV - Filed February 19, 2009

On appeal, Regions Financial Corporation ("Regions") asserts numerous reasons why the doctrines of res judicata and collateral estoppel should not bar its claim against the Defendants National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") St. Paul Mercury Insurance Company ("St. Paul"), and Twin City Fire Insurance Company ("Twin City") (collectively "Defendant Excess Insurers").  Regions originally sued Defendants in federal court seeking indemnification pursuant to its insurance contract, and the District Court granted Defendants summary judgment because Regions failed to give simultaneous notice.  Regions has now sued Defendant Excess Insurers in circuit court for breach of the same insurance contract.  Regions claims that during the federal court appeal it discovered new evidence that it had given simultaneous notice to Defendant Excess Insurers through their agent. Regions claims, however, that it could not have discovered this evidence earlier because Defendant Excess Insurers concealed the agency relationship. The trial court granted Defendant Excess Insurers' motions for summary judgment on the basis of res judicata.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

John McQuiston, Memphis, Tennessee, for the appellant, Regions Financial Corporation.

H. Frederick Humbracht, Jr., Nashville, Tennessee, for the appellee, National Union Fire Insurance Company of Pittsburgh, PA.

John R. Riddle, Dallas Texas, Joseph T. Getz, Memphis, Tennessee, for the appellee, The St. Paul Mercury Insurance Company, and Michael G. McLaren and Vickie Hardy Jones, Memphis, Tennessee, for the appellee, Twin City Fire Insurance Company.

**OPINION**

**Background and Procedural History**

Plaintiff/Appellant Regions Financial Corporation ("Regions") filed this lawsuit in Shelby County Circuit Court on February 21, 2006 ("Shelby County suit"). The basis of the suit was that Regions sought indemnification from its insurers for several monetary losses it sustained through mortgage fraud and liability claims. Although Regions originally sued various different parties, the only Defendants on this appeal are Regions' excess insurers.

**A. The Insurance Claims**

Regions[1] and Marsh USA ("Marsh")[2] contracted on June 1, 1999, for Marsh to compile an insurance policy for Regions.[3] Marsh negotiated a blended insurance program that included Continental Casualty Co. ("CNA") as Regions' primary insurer and a three-tier excess insurance program from Defendant Excess Insurers. CNA's primary policy insured Regions up to $25 million, and Defendant National Union insured Regions for an additional $25 million once Regions had exhausted its primary policy (first excess tier). Defendant St. Paul insured Regions for another $25 million above the CNA and National Union policies (second excess tier), and Defendant Twin City insured Regions for $25 million more above St. Paul's limit (third excess tier); each excess insurance policy required Regions to exhaust the limits of the underlying policies before the insurer must indemnify Regions for any loss. National Union and St. Paul also required Regions to give it notice simultaneously with any notice given under the primary policy, and Twin City's policy included a integration clause that incorporated the underlying policies and obligated the insured to give notice pursuant to the underlying insurance provisions.

Between 1999 and 2001, Regions extended a running line of credit to Greatstone, a mortgage banking company. After Greatstone defaulted on its loans in 2001, Regions discovered that Greatstone had forged many of the borrower's signatures to procure advances and Greatstone's principals had permanently relocated to Costa Rica with those advances ("the Greatstone loss"). Regions claims that, to recoup its loss, it gave notice to CNA on September 20, 2001, and filed a formal complaint with CNA around February 15, 2002. Regions also claims that it gave Defendant Excess Insurers notice and proof of loss through its agent, Marsh. Regions alleges that Marsh sent a letter to Defendant Excess Insurers giving notice on March 12, 2002; Defendant Excess Insurers all deny receiving that letter. CNA denied Regions' claim around March 19, 2002, and in November 2002 Regions filed suit in federal district court.

---

[1] It was actually Union Planters that contracted with Marsh USA, but as of June 29, 2005, Union Planters Corporation merged into Regions Financial Corporation. To avoid unnecessary complication, we will simply refer to both entities as "Regions."

[2] Regions also filed this suit against Joseph Lammel, an employee at Marsh. Regions' allegations against Lammel generally mirror its claims against Marsh. The distinction between the two is not significant to this appeal, so we will refer to both entities as "Marsh."

[3] Regions and Marsh renewed this agreement in September 2000, October 2001, October 2002, and June 2003.

Regions also seeks indemnification for three other insurance claims that it claims should be covered by its policies with Defendant Excess Insurers. These three claims, which Regions dubs the "East Main Baptist Church litigation," the "Conners suit" and "the SBU litigation," arise from separate loan losses that arose during the policy period. Regions alleges that it advised Marsh of these potential claims, requested that Marsh give CNA notice of the claims, and sought to know if the excess insurers must also be notified. In its complaint, Regions alleges that it notified Marsh of the ongoing East Main Baptist Church litigation on July 13, 2000, the Conners suit on February 23, 2001, and of the SBU litigation on August 24, 2000.

## B. The Lawsuits

From the issues raised on appeal it is apparent that Regions filed multiple suits resulting from its Greatstone loss. In May 2002, Regions filed suit against its primary insurer, CNA, in federal court in the Western District of Tennessee ("District Court"). Final judgment was entered with the District Court in August 2004. While post-judgment motions were pending with the District Court, the State of New York filed a complaint in a New York state court against Marsh alleging that it was secretly receiving payments from the parent companies of Defendants. Marsh and the New York Attorney General reached a settlement on January 30, 2005, and Marsh paid Union Planters, Regions' predecessor, $190,108.80 pursuant to this settlement in September 2005. Meanwhile, the District Court disposed of the parties' post-judgment motions on June 6, 2005, and Union Planters, Regions' predecessor, immediately filed notice of appeal to the Sixth Circuit. In February 2006, while the federal proceedings were pending in the Sixth Circuit, Regions then filed the Shelby County Suit from which this appeal proceeds. A year later, on February 27, 2007, the Sixth Circuit affirmed the District Court. Subsequently, the trial court granted Defendant Excess Insurers summary judgment in the Shelby County suit on the basis of res judicata and collateral estoppel.

### i. District Court Proceedings

We review each of these proceedings chronologically, beginning with Regions' lawsuit in the federal court. Regions first filed suit in the Western District of Tennessee against CNA claiming diversity jurisdiction and alleging that the Greatstone loss was covered in Section E of the party's contract as a loss resulting from fraud and that CNA was in breach of their contract by refusing to indemnify Regions for that loss. Regions then amended its complaint on October 11, 2002, to join Defendant Excess Insurers as parties and allege that its agent, Marsh, gave notice to Defendant Excess Insurers, entitling it to indemnification under the excess policies if its loss exceeded CNA's policy limits. In both complaints, Regions sought a judgment declaring its rights and obligations under the contract and enforcement of the contract in the form of a monetary judgment.

The District Court entered an order on August 25, 2004, granting Regions' motion for summary judgment against CNA and granting Defendant Excess Insurers' motions for summary judgment against Regions. The District Court found that Regions gave CNA notice of the Greatstone loss on September 20, 2001 and submitted formal documentation of its claim to CNA on February 15, 2002. Regions claimed that its agent, Marsh, gave notice to Defendant Excess

Insurers via letter on March 12, 2002.[4]  Viewing the facts in the light most favorable to Regions, the District Court accepted Regions' argument that it gave CNA notice on February 15th and that it gave Defendant Excess Insurers notice on March 12th; the District Court still held, however, that a twenty-five day delay was not simultaneous notice.  Because simultaneous notice was a condition precedent of Regions' insurance contracts with  Defendant Excess Insurers and Regions failed to give that notice, the District Court held that Defendant Excess Insurers were entitled to summary judgment.

On September 8, 2004, Regions filed a post-judgment motion to alter or amend the District Court's judgment pursuant to Federal Rule of Civil Procedure 59 or, in the alternative, for relief from judgment pursuant to Federal Rule of Civil Procedure 60.  Essentially, Regions argued for the District Court to alter or amend its decision that there was not simultaneous notice as an error of law or as being manifestly unjust, and Regions requested that the District Court certify the issue to the Tennessee Supreme Court.  The District Court, however, denied both requests on June 9, 2005.  Regions filed notice of appeal to the Sixth Circuit on July 6, 2005.

### ii. New York Lawsuits

In the meantime, the State of New York was investigating Marsh's relationship with various insurance companies.  In an entirely unrelated proceeding, New York's Attorney General filed suit against Marsh in October 2004 alleging fraudulent business practices, antitrust violations, securities fraud, unjust enrichment, and common law fraud.  The essence of the Attorney General's complaint was that Marsh contracted with clients to procure insurance policies for them, claiming that it advocated on the client's behalf and not representing insurance companies, while, simultaneously, Marsh received contingent commissions from the insurance companies and steered its clients toward certain companies based on those commissions.  Marsh settled with the Attorney General on January 30, 2005.  Pursuant to this agreement, Marsh was to pay $850,000,000.00, proportionately, to its policyholders and undertake various business reforms.  As one of Marsh's policyholders, Regions received $190,108.80 from the settlement account.  Regions claims that it only learned in September 2005, when it received payment pursuant to Marsh's settlement agreement with the Attorney General, that Defendant Excess Insurers paid Marsh contingent commissions.

### iii. Sixth Circuit Appeal

After filing its notice of appeal, Regions filed a motion with the Sixth Circuit requesting that it certify to the Tennessee Supreme Court the legal question whether an insurance company must show that it was actually prejudiced by late notice in order to defeat coverage.  The Sixth Circuit denied that motion on February 1, 2006.  The parties argued before the Sixth Circuit on December 5, 2006, and the Sixth Circuit affirmed on February 27, 2007.  *Union Planters Bank, N.A. v. Continental Cas. Co.*, 478 F.3d 759 (6th Cir. 2007).  The Sixth Circuit upheld the District Court's determination that Regions could not enforce its insurance contracts with Defendant Excess Insurers

---

[4]The District Court also noted that Defendant Excess Insurers denied receiving this letter.

because it failed to meet the condition precedents of the contracts– namely, a twenty-five day delay did not constitute simultaneous notice to the excess insurers. The Sixth Circuit also agreed that Tennessee law would not excuse noncompliance with the notice provision even if Defendant Excess Insurers were not prejudiced by the delay.

### iv. Shelby County Suit

Although Regions filed its Shelby County suit in February 2006 while its appeal was pending with the Sixth Circuit, the trial court did not issue any orders on the matter until after the Sixth Circuit rendered its decision. In the Shelby County suit, Regions alleged in its original complaint that Marsh breached its contract with Regions, was professionally negligent in monitoring Regions' losses and providing notice thereof, and negligently misrepresented that it had given Defendant Excess Insurers notice. In its fourth claim for relief, Regions alleged that Defendant Excess Insurers breached their contracts with Regions by "failing and refusing to provide coverage to [Regions]." Although Regions filed an Amended Complaint in February 2006, it did not allege any new causes of action.

On August 24, 2007, Regions filed a motion to amend the amended complaint and first alleges that Defendant Excess Insurers induced Marsh to breach its contract with Regions. Regions also alleged in its motion that Marsh was both its agent and Defendant Excess Insurers' agent, so when Regions gave Marsh notice of the Greatstone claims that also constituted notice to the Defendant Excess Insurers. On September 4, 2007, Regions actually filed Notice of its Proposed Amendment to the First Amended Complaint in the Shelby County suit. Regions formally alleged that Defendant Marsh breached its fiduciary duty of loyalty to Regions by acting as an undisclosed, paid agent of Defendant Excess Insurers. Regions also asserted that Defendant Excess Insurers induced Marsh to breach its contractual fiduciary obligation to Regions. Regions requested treble damages and attorney fees against Defendant Excess Insurers pursuant to Tennessee common law, Tennessee Code Annotated § 47-50-109, and Tennessee Code Annotated § 47-18-101 et. seq., as an unfair or deceptive practice. Four months later, Regions filed a revised notice of the proposed amendment to its first amended complaint limiting its inducement to breach of contract claim solely against Defendant National Union and abandoning its Consumer Protection Act argument completely. Regions filed a second revised notice on January 15, 2008, further articulating the same claims that it alleged in its first revised notice.

The trial court denied Regions' Motion to Amend its Amended Complaint and granted Defendants' pending motions for summary judgment. The trial court found that the same issues in this case were previously asserted in the District Court, and that Regions' claim against Defendant National Union for the Greatstone loss was barred by res judicata and that the doctrine of collateral estoppel barred Regions' three additional claims for coverage. The trial court then certified the case as a final judgment pursuant to Tennessee Rule of Civil Procedure 54.02. From this judgment, Regions filed timely notice of appeal to this Court.

### Issues

Regions raises only one issue on appeal: it asserts that the trial court erred by granting Defendants' Motions for Summary Judgment on the basis of res judicata and collateral estoppel. As stated verbatim in its brief, Regions presents the issue as follows:

> Whether Defendants Excess Insurers have carried their burden of proof to establish, based on the prior case of *Union Planters Bank, N.A. v. Continental Casualty Co.,* 478 F.3d 754 (6th Cir. 2007), the defenses of *res judicata* and/or collateral estoppel to the claims made in the complaint and the proposed amendments to the complaint in this case, such that the trial court's granting of the Defendants' Motions for Summary Judgment was proper?

Regions argues that res judicata and collateral estoppel do not preclude their claims for several reasons. In support of this one issue, Regions makes several different arguments. First, Regions asserts that concealed facts create a new cause of action that was not and could not have been at issue in the federal case. Second, Regions argues that the District Court's statements regarding the liability of Defendant Excess Insurers was dicta because each underlying insurance policy had not been exhausted. Third, Regions claims that there is no preclusive effect because the District Court's determination that simultaneous notice was not provided to Defendant Excess Insurers dealt with a different section of the insurance policy than at issue in this case and was a declaratory judgment. Fourth, Regions argues that this situation warrants an exception to general preclusion rules both because it was not a fair and full adjudication, violates public policy, and is necessary to avoid the inequitable administration of the law. Finally, Regions argues that pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court should not have granted summary judgment until Plaintiffs obtained discovery from Defendant Excess Insurers. Defendant Excess Insurers raise the additional issue that Regions should be judicially estopped from claiming that Marsh was Defendant Excess Insurers' agent because it claimed that Marsh was its agent in the previous litigation.

## Standard of Review

Regions appeals the trial court's award of summary judgment to Defendant Excess Insurers arguing that res judicata and collateral estoppel do not bar its claims. We review an award of summary judgment *de novo,* affording no presumption of correctness to the conclusions of the trial court. *Guy v. Mut. of Omaha Ins. Co.,* 79 S.W.3d 528, 534 (Tenn.2002). An award of summary judgment is appropriate if

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgment as a matter of law.

Tenn. R. Civ. P. 56.04.

To support a motion for summary judgment, the movant must do more than assert, in a conclusory fashion, that the non-movant has no evidence. *Hannan v. Alltell Publ'g Co.*, 270 S.W.3d

1, 4 (Tenn. 2008). Instead, the movant "must either affirmatively negate an essential element of the nonmoving party's claim or establish an affirmative defense." *Id.* at *5 (citations omitted). When a party has submitted a properly supported motion for summary judgment, the burden shifts to the nonmoving party to establish the existence of disputed material facts. *Id.* In determining whether to award summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Staples v. CBL & Assocs.,* 15 S.W.3d 83, 89 (Tenn. 2000). The court should award summary judgment only when a reasonable person could reach only one conclusion based on the facts and the inferences drawn from those facts. *Id.* Summary judgment is not appropriate if there is any doubt about whether a genuine issue of material fact exists. *McCarley v. West Quality Food Serv.,* 960 S.W.2d 585, 588 (Tenn. 1998).

## Choice of Law

The parties do not dispute the material facts of this case; the sole question is whether, as a matter of law, res judicata or collateral estoppel bars Regions' claims. Because the issue in this case is the preclusive effect of a federal court judgment, we also review whether state or federal law applies. The general rule is that a court gives a judgment the same preclusive effect as the court in which the prior judgment was rendered. *Mitrano v. Houser*, 240 S.W.3d 854, 861 (Tenn. Ct. App. 2007); *see also* James Wm. Moore, 18 Moore's Federal Practice § 130.21 (Matthew Bender 3d ed.). Federal law, therefore, governs what effect the prior federal court judgment has on these proceedings. *See Semteck Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507–08 (2001). The United States Supreme Court has pronounced, however, that in diversity cases, the preclusive effect of a federal judgment is generally the same as that attached to a state court judgment from the forum in which that rendering federal court sits.[5] *Id.* at 508. In this case, the District Court for the Western District of Tennessee rendered the original judgment; it is for this reason that we apply Tennessee law to determine whether the federal court judgment bars the case at hand.

## Analysis

During the proceedings before the trial court, Regions made several different allegations against Defendant Excess Insurers. In its original complaint, filed February 21, 2006, the only claim for relief that Regions sought against Defendant Excess Insurers was for breach of contract "by failing and refusing to provide coverage to [Regions]." On August 24, 2007, Regions filed a motion to amend the amended complaint and first alleges that Defendant Excess Insurers induced Marsh to breach its contract with Regions. Regions also alleged in its motion that Marsh was both its agent

---

[5]The only instance where the United States Supreme Court says it would not apply this rule is "in situations in which the state law is incompatible with federal interests." *Semteck Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 509 (2001). The example given is where a state does not preclude the dismissal of a case for willful violation of discovery orders. There is nothing in the present case to indicate that this exception would apply here.

and Defendant Excess Insurers' agent, so when Regions gave Marsh notice of the Greatstone claims that also constituted notice to the Defendant Excess Insurers.

We note, as an initial matter, that Regions does not raise an issue with the trial court's order denying its motion to amend the amended complaint in its Statement of the Issues. We may consider an issue waived where it is argued in the brief but not designated as an issue. *Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002). Likewise, where a party fails to address an issue in its argument section of the brief, we consider the issue to be waived. *Id.* The trial court's denial of the motion to amend was within its sound discretion, and we would not reverse absent a showing that the trial court abused its discretion. *Hawkins v. Hart*, 86 S.W.3d 522, 532 (Tenn. Ct. App. 2001). Regions does not raise any error regarding its denied Motion to Amend in the Statement of the Issues, and it does not argue in its brief that the trial court abused its discretion in denying Regions' Motion to Amend. In its reply brief, Regions asserts that it did assert that the trial court erred in denying its Motion to Amend and states that if it was necessary to have that precise wording, it asserted the claim at that time. However, "it is not the office of a reply brief to raise issues on appeal." *Gentry v. Gentry*, No. E2000-02714-COA-R3-CV, 2001 WL 839714, at *4 n.3 (Tenn. Ct. App. 2001)(*no perm. app. filed*). Accordingly, we decline to address Regions' allegations that res judicata does not bar the fraud and inducement to breach contract causes of actions that Regions alleged in its Motion to Amend the Amended Complaint. The basis upon which Regions can claim on appeal that it has a new cause of action, therefore, rests solely upon the allegations in its amended complaint filed on February 24, 2006, and the incorporated original complaint. These pleadings solely allege that Defendant Excess Insurers breached their contract to provide insurance coverage to Regions.

## I.  Claim Preclusion-Same Cause of Action

Regions argues that the judgment in the federal court does not prohibit its breach of contract claim in state court because new facts have altered the parties' legal rights and it could not have raised this issue before the District Court. The new fact that Regions asserts changes its legal rights is the evidence that Defendant Excess Insurers paid Marsh to procure insurance contracts for it. From this evidence, Regions argues that Marsh acted as Defendant Excess Insurers' agent, notice to Marsh that Regions was seeking coverage for the Greatstone loss was imputed to Defendant Excess Insurers, Defendant Excess Insurers, therefore, received simultaneous notice as was required by the insurance contracts, and Defendant Excess Insurers breached the insurance contracts by not indemnifying Regions. Regions relies upon these allegedly new facts to also argue that res judicata does not apply to bar its claim because it could not have raised this argument in the District Court pleadings because Defendant Excess Insurers concealed its relationship with Marsh.

Although the parties argue the merits of this case employing the terms res judicata and collateral estoppel, we note that "res judicata" broadly refers to "[a]n issue that has been definitively settled by judicial decision." Black's Law Dictionary 1336–37 (8th ed. 2004); *see Richardson v.*

*Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 n. 11 (Tenn. 1995). This broad definition, however, lumps together two different preclusion doctrines. Black's Law Dictionary 1336–37 (8th ed. 2004). Res judicata, as it has come to be understood in a narrow sense is a claim preclusion doctrine that "bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been raised in the former suit." *State ex. rel. Cihlar v. Crawford*, 39 S.W.3d 172, 178 (Tenn. Ct. App. 2000). To avoid confusion, we have adopted the terminology of the Restatement (Second) of Judgments and refer to the traditionally narrow definition of res judicata as "claim preclusion." *In re Bridgestone/Firestone*, No. W2006-02550-COA-R3-CV, 2008 WL 4253516, at *5 n.8 (Tenn. Ct. App. 2008). Likewise, collateral estoppel is an issue preclusion doctrine, *State ex. rel. Cihlar v. Crawford*, 39 S.W.3d 172, 178 (Tenn. Ct. App. 2000), and we will refer to it as "issue preclusion." We only employ the term res judicata as it broadly applies to both preclusion doctrines. *Bridgestone/Firestone*, 2008 WL 4253516, at *5 n.8.

## A. Discovery of New Facts

Claim preclusion bars multiple lawsuits between the same parties on causes of action that were or could have been litigated in the first lawsuit. The party asserting the defense of claim preclusion has the burden of proving 1) that the underlying judgment was rendered by a court of competent jurisdiction, 2) that the same parties were involved in both lawsuits, 3) that the same cause of action was involved in both suits, and 4) that the underlying judgment was on the merits. *Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990). Regions concedes that the District Court and Sixth Circuit are courts of competent jurisdiction and that the same parties were involved in both suits.

On appeal, Regions first alleges that Defendant Excess Insurers failed to prove that the same cause of action was involved in both suits. There is no question, however, that both the Shelby County suit and the federal suit pleadings allege a breach of contract claim. Regions bases its argument, however, upon the statement that

> [a] prior judgment or decree does not prohibit the later consideration of rights that had not accrued at the time of the earlier proceeding or the reexamination of the same question between the same parties when the facts have changed or new facts have occurred that have altered the parties' legal rights and relations.

*Lein v. Couch*, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998)(citing *White v. White,* 876 S.W.2d 837, 839–40 (Tenn. 1994)). Regions argues that evidence that Defendant Excess Insurers paid Marsh to procure insurance contracts for them was not a "fact at issue" in the federal proceedings and Regions should, therefore, be able to re-examine the same question again.

The Tennessee Supreme Court articulated in 1944 that "[a] plea of res judicata is not available merely because the subject matter of two suits is the same. The cause of action in the two suits must be the same." *Copeland v. Copeland*, 177 S.W.2d 555, 555 (Tenn. 1944). The language that Regions relies upon distinguishes separate causes of action regarding the same subject matter. In *White*, a wife sought an adjudication that her husband was deceased; a jury found, however, that wife had not established by a preponderance of the evidence that her husband had died. *White v. White*, 876 S.W.2d 837, 838–39 (Tenn. 1994). Nearly five years later, Wife filed another suit against the same defendants seeking essentially the same relief and alleging the same facts as in her prior suit. *Id.* at 839. When the defendants asserted res judicata, the Tennessee Supreme Court held that res judicata did not bar wife's claim. As part of its analysis, the Supreme Court said that the passage of time since wife's first suit was new evidence and the cause of action in the first case was whether Husband had died by the time of trial while the issue in the second case was whether Husband had died by the time that the insurance policy had expired, which was nearly a year after the first trial. *Id.* at 840. Therefore, the Court reasoned that neither the issue to be determined nor the evidence was the same as in wife's first suit.

The difference between the Supreme Court's analysis in *White* and Regions' argument here is that *White* and the cases that cite to it consider new facts and evidence that occurred after the first adjudication. Facts occurring after an adjudication may give rise to a new cause of action that may be on the same subject matter as the first action but would not be barred by res judicata. *See, e.g., Copeland v. Copeland*, 177 S.W.2d 555 (Tenn. 1944); *Banks v. Banks*, 77 S.W.2d 74 (Tenn. Ct. App. 1934). Regions, however, is arguing that this same principle applies to facts that it alleges occurred before it filed suit in District Court but which it claims it had not discovered until it appealed to the Sixth Circuit. Two months after the Tennessee Supreme Court issued *White*, this Court addressed a similar argument in *Short v. Short*. *Short v. Short*, No. 03A01-9402-CH-00065, 1994 WL 315902 (Tenn. Ct. App. 1994). This Court commented that

> [w]e must be careful to distinguish between a "change in facts" or "new facts [which] have occurred after the original judgment" and "newly discovered evidence." Newly discovered evidence is simply evidence of facts as they existed at the time of the original trial and cannot be said to be a "change in facts" or "new facts."

*Id.* at *4. As we articulated in *Short*, the Tennessee Supreme Court's language that res judicata does not bar facts that have changed or new facts does not extend to newly discovered evidence. *Id.* Defendant Excess Insurers paid Marsh to procure insurance contracts with Regions before Regions filed its District Court suit; the evidence that Regions wishes to now introduce is merely newly discovered and is insufficient to demonstrate that Regions has a new cause of action.

## B. Issue Could Not Have Been Raised

-10-

In a similar argument, Regions also asserts that it could not have raised its agency argument to the District Court because it did not know when it filed its complaint that Defendant Excess Insurers paid Marsh for procuring insurance contracts. Regions claims that it only became aware on September 16, 2005, when Regions received payment from Marsh pursuant to the terms of its settlement agreement with the New York Attorney General, that Defendant Excess Insurers were also paying Marsh; this was several months after the District Court disposed of the parties' post-trial motions and after Regions had filed its appeal to the Sixth Circuit. The trial court found that the facts surrounding Defendant Excess Insurers' payments to Marsh were "known before the [Sixth Circuit] ruled and there was plenty of time to raise or present those facts to either the District Court or the [Sixth Circuit.]"

On this appeal, Regions argues that the trial court erred in finding that Regions could have raised the agency issue before the District Court pursuant to Federal Rule of Civil Procedure 60(b) ("Rule 60(b)")[6] because consideration of the new facts was purely discretionary. Regions' argument centers around the principle that claim preclusion only bars a second suit "on the same cause of action with respect to all issues which were or could have been raised in the former suit." *State ex. rel. Cihlar v. Crawford*, 39 S.W.3d 172, 178 (Tenn. Ct. App. 2000). Regions argues that an issue only "could have been raised" if the moving party had an unfettered right to raise it. As it is within a trial court's discretion to relieve a party from a judgment pursuant to a Rule 60(b) motion, Regions now argues that it did not have this unfettered right and that it should, therefore, be permitted to file its claim as an independent action.

---

[6] Federal Rule of Civil Procedure 60(b) provides relief from a judgment or order even after the time has passed to file a motion for a new trial or to alter or amend a judgment. The relevant provisions are as follows:

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding**. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.
**(c) Timing and Effect of the Motion**.
(1) *Timing*. A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) [under Rule 60(b)] no more than a year after the entry of the judgment or order or the date of the proceeding.
(2) *Effect on Finality*. The motion does not affect the judgment's finality or suspend its operation
**(d) Other Powers to Grant Relief**. This rule does not limit a court's power to:
(1) entertain an independent action to relieve a party from a judgment, order, or proceeding;
(2) grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or
(3) set aside a judgment for fraud on the court.

Claim preclusion "'bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or *could have been litigated* in the former suit.'" *Patton v. Estate of Upchurch*, 242 S.W.3d 781, 790 (Tenn. Ct. App. 2007) (quoting *Young v. Barrow*, 130 S.W.3d 59, 64 (Tenn. Ct. App. 2003)). This Court tests whether a cause of action is the same by considering whether the primary right and duty or wrong are the same in each case. *Id.* (quoting *Gerber v. Holcomb*, 219 S.W.3d 914, 917–18 (Tenn. Ct. App. 2006)). Because the complaints in both the federal suit and the Shelby County suit allege that Defendant Excess Insurers breached the same contract in the same manner, it is clear that they involve the same cause of action.

The public policy underlying the doctrine of res judicata is to "promote finality in litigation in order to conserve judicial resources and to relieve litigants from the cost and vexation of multiple lawsuits." *Crawford*, 39 S.W.3d at 178. Unlike issue preclusion, claim preclusion bars relitigation of the same cause of action not only as to matters actually determined, but "also to other matters which in the exercise of due diligence could have been presented in the prior action." *Gerber*, 219 S.W.3d at 918; *see also Jordan v. Johns*, 79 S.W.2d 798 (Tenn. 1935). Because Regions admits that it learned of Defendant Excess Insurers' relationship with Marsh before the federal court entered a conclusive judgment, there is no question that it could have, with due diligence, presented this issue in a Rule 60(b) motion. Therefore, without addressing whether it could have been raised before the District Court at any point earlier than Regions discovered it, we find that claim preclusion does bar this issue.

Regions argues that "[i]t is established law that if the matter was one that the Court, in its discretion, might have allowed or not, this does not meet the 'could have been raised' test." Because the trial court has the discretion to grant a Rule 60(b) motion, Regions claims that it could not have raised its newly-discovered issue in that manner. Regions, however, fails to cite any Tennessee authority, and we find none, that res judicata only bars issues and facts over which the trial court has no discretion. In support of this proposition, Regions cites to federal case law that a plaintiff is not required to amend an existing lawsuit to add a claim that arose after it filed the first suit. In applying this rule, however, Regions again presupposes that its current breach of contract claim arose after it filed its breach of contract claim in federal court; as we have already discussed, that is not the case.

We find the facts in this case analogous to a different line of cases. In both the federal case and this state court case, Regions argues that it gave Defendant Excess Insurers simultaneous notice; the only new issue that Regions asserts is *how* it gave Defendant Excess Insurers notice. Generally,

> [t]his Court cannot accept the argument . . . that, by disclaiming or failing to present a particular fact or theory supporting his action, a plaintiff may thereby reserve and preserve the disclaimed and unpresented fact or theory as an "ace in the hole" to be used as a ground for a second lawsuit based on such ground. To assent to plaintiff's insistence would be to condone piecemeal presentation of suits and defenses at the whim of the parties. Such is not the policy of our law.

*McKinney v. Widner*, 746 S.W.2d 699, 706 (Tenn. Ct. App. 1987). Further, we have held that, "[t]he estoppel of a judgment or decree extends to all matters material to the decision of the cause which the parties exercising reasonable diligence might have brought forward at the time." *Id.* at 705, (citing *State ex. rel. French v. French*, 188 S.W.2d 603 (1945)). This Court has specifically held that claim preclusion barred a second suit against a defendant employer where its employee learned new facts in a subsequent lawsuit that revealed that defendant was employee's real employer. *Boyd v. Bruce*, No. M2000-03211-COA-R3-CV, 2001 WL 1346264, at *4 (Tenn. Ct. App. 2001), *perm. app. denied* (Tenn. Feb. 11, 2002). In *Boyd*, this Court stated that

> Appellants argue that facts revealed in subsequent lawsuits regarding who was the real employer and the decisions of the court thereon have changed the cause of action. We disagree. A change in Appellant's theory of liability does not create a new cause of action. Tennessee law is clear that res judicata bars the litigation of all issues that could have been litigated and all facts pertaining to those issue that could have been brought forward.

*Id.* We find the basic facts of this case to be significantly analogous to those in *Boyd* and, therefore, find that Regions' theory as to how Defendant Excess Insurers received simultaneous notice of its claims for the Greatstone loss could have been raised in the District Court proceedings and are, therefore barred by claim preclusion.

### C. Separate Contract Provision

Regions also argues that its breach of contract action in this case is a different cause of action than in the federal case because it now seeks coverage pursuant to Sections A, B, C, and D of its insurance contract, while the District Court only adjudicated its rights under Section E of the contract. Regions' argument, however, fails because Regions is essentially arguing that it should be permitted to split its claim.

Claim preclusion prohibits parties from splitting their cause of action; it requires parties "to raise in a single lawsuit all the grounds for recovery arising from a single transaction or series of transactions that can be brought together." *In re Order to Encapsulate Native American Indian Gravesites in Concrete and Pave Over with Asphalt*, 250 S.W.3d 873, 882 (Tenn. Ct. App. 2007) (citing *Bio-Technology Gen. Corp. v. Genetech, Inc.*, 80 F.3d 1553, 1563 (Fed. Cir. 1996)). As we have previously discussed, Regions adjudicated the Greatstone cause of action in federal court. Where a plaintiff brings two separate breach of contract actions based upon the same wrong but argues liability pursuant to a different contract in the second case the second action is barred by the doctrine of claim preclusion. *Trew v. Wayne-Gossard Corp.*, 694 S.W.2d 956, 958 (Tenn. Ct. App. 1985); *Federico v. Aladdin Indus.*, No. M2004-01693-COA-R3-CV, 2006 WL 558897 (Tenn. Ct. App. 2006), *perm. app. denied* (Tenn. Aug. 21, 2006).

-13-

As for the three additional insurance claims for which Regions now seeks indemnification, these are also barred by claim preclusion. Claim preclusion applies to all issues that were or could have been raised regarding the same cause of action. *State ex. rel. Cihlar v. Crawford*, 39 S.W.3d 172, 178 (Tenn. Ct. App. 2000). The same cause of action in both this case and the federal case is Defendant Excess Insurers' refusal to indemnify Regions pursuant to its insurance claims. *See Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1270 (11th Cir. 2002) (Although plaintiff alleged 42 separate wrongs not brought in the prior lawsuit, both lawsuits involved breaches of the same contract committed by the same parties involving the same general type of conduct, and claim preclusion, thus, barred the claims made in the second suit); *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 938 (5th Cir. 2000) (Where insurer denied benefits under same insurance policy, plaintiff's two suits both arose out of the same transaction). Regions' argument that it may now recover its liability in the East Main Baptist Church litigation, the Conners suit and the SBU litigation because it seeks indemnity pursuant to different sections of its insurance contract does not overcome the fact that it split its original action; Regions should have brought these claims before the district court when it sued Defendant Excess Insurers for the Greatstone loss, and these claims are now barred by claim preclusion.

## II. Dicta

Regions asserts that at the time the district court granted summary judgment in favor of Defendant Excess Insurers, coverage had not yet been implicated under the excess insurance policies. It claims, therefore, that it had no right to sue Defendant Excess Insurers in that action, and any statement made by the federal courts regarding the excess policies is dicta. *See Fite v. Wood*, 250 S.W.2d 543, 312–14 (Tenn. 1952). Because res judicata does not apply to dicta, Regions claims that the Sixth Circuit's determination has no preclusive effect. We strongly disagree; the district court granted summary judgment to Defendant Excess Insurers on the basis that Regions failed to met a condition precedent of the insurance policies under which Regions sought coverage.

Regardless of Regions' allegations before this Court that it may have improperly joined Defendant Excess Insurers, the district court dismissed those claims pursuant to Defendant Excess Insurers' motions for summary judgment. As the Tennessee Supreme Court noted in *Fite*, the very definition of the term dicta indicates that it "has no bearing on the direct route or decision of the case but is made aside or on the way and is, therefore, not a controlling statement to courts when the question rises again that has been commented on." *Id.* at 314. A motion for summary judgment, on the other hand "goes directly to the merits of the litigation." *Anderson v. Rayner*, No. W2004-00485-COA-R3-CV, 2005 WL 3543682, at *5–6 (Tenn. Ct. App. 2005) (*no perm. app. filed*) (quoting *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993)). We do not find that the district court's determination was dicta, and we, therefore, find no merit to Regions' argument that it has no preclusive effect.

## III. Declaratory Judgment

-14-

Regions also asserts that declaratory judgments are only conclusive with respect to the precise issues actually and necessarily determined in the action. *See Empire Fire & Marine Ins. Co. v. J. Transp., Inc.*, 880 F.2d 1291, 1296 (11th Cir. 1989). Because Regions sought a declaration of rights and obligations of the parties under various insurance contracts in federal court, it claims that the district court action was simply a declaratory judgment. In addition, Regions asserts that the federal court only adjudicated those contract rights under Section E of the insurance policy, so liability claims pursuant to Sections A,B,C, and D of the policies were never precisely and necessarily determined. Regions, therefore, asserts that its claims are not barred by res judicata.

We, however, simply cannot agree that Regions merely sought a declaratory judgment in the federal court. As the Tennessee Supreme Court recently reiterated, "'[d]eclaratory judgments' are so named because they proclaim the rights of the litigants without ordering execution or performance. Their purpose is to settle important questions of law before the controversy has reached a more critical stage." *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 837 (Tenn. 2008)(citations omitted). In its amended complaint filed with the district court, Regions requested that "should the [c]ourt determine that [Regions'] covered loss exceeds Continental's limit of liability under the Policy, then [Regions] is entitled to indemnification of its loss under one or more of the policies issued by National Union, St. Paul, and Twin City. Regions clearly sought more than simply a declaration of rights; it sought enforcement of its indemnification rights pursuant to the contract. Because we find that the federal court determination was more than a declaratory judgment, Regions' argument on this matter must fail.

## IV. Exceptions to Res Judicata

Regions also argues that in this case we should adopt and apply several exceptions to res judicata that are found in the Restatement (Second) of Judgments § 28. Section 28, titled as Exceptions to the General Rule of Issue Preclusion, states that

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances.
>
> . . . .
>
> (2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) *a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws . . .*
>
> . . . .

-15-

(5) *There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest* or the interests of person not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or *(c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.*

Restatement (Second) of Judgments § 28 (1982) (emphasis added). Regions argues, according to the Restatement, that this Court should not bar its claims on the basis of res judicata for three separate reasons: (1) there was a lack of fair and full adjudication in the prior case, (2) there is a clear and convincing need for a new determination of the issue because of the potential adverse impact of the determination on the public interest, and (3) to avoid the inequitable administration of the law.

Although the Restatement (Second) of Judgments § 28 refers to issue preclusion, our discussion, thus far, has been that claim preclusion bars Regions' suit. In addition, we note that the Restatement itself discourages applying exceptions to res judicata:

There are instances in which the interests supporting a new determination of an issue already determined outweigh the resulting burden on the other party and on the courts. But such instances must be the rare exception, and litigation to establish an exception in a particular case should not be encouraged. Thus it is important to admit an exception only when the need for a redetermination of the issue is a compelling one.

Restatement (Second) of Judgments § 28 cmt. g (1982).

Regions argues that we should not apply res judicata in this case because it did not have an adequate opportunity or incentive to obtain a full and fair adjudication. In support of this position, Regions cites Restatement (Second) of Judgments § 28, comment j which discusses when there is a lack of fair opportunity to litigate an issue in the initial action and states that "[i]n an action in which an issue is litigated and determined, one party may conceal from the other information that would materially affect the outcome of the case. Such concealment may be of particular concern if there is a fiduciary relationship between the parties." Restatement (Second) of Judgments § 28 cmt. j (1982). Restatement (Second) of Judgments § 26[7] explains that this exception may also apply to

———————————
[7] Restatement (Second) of Judgments § 26(1)(f) states the following:

(continued...)

-16-

claim preclusion. Restatement (Second) of Judgments § 26(1)(f). Section 26, comment j states that Section 26(1)(f) may be applicable where a plaintiff can show by clear and convincing evidence that its failure to include part of its claim in the earlier action was caused by defendants' fraud, concealment, or misrepresentation.[8]

Regions also argues that this Court should allow relitigation of this claim to avoid violation of public policy or manifest injustice. Regions' alleged injustice is that it be bound by the Sixth Circuit determination, which it claims is wrong and violates Tennessee public policy. Regions argues that the District Court and Sixth Circuit erroneously distinguished its claim from the case *Alcazar v. Hayes*, 982 SW.2d 845 (Tenn. 1998), where the Tennessee Supreme Court, on public policy grounds, required an insurer to demonstrate prejudice from an insured's failure to provide notice before the insured forfeited coverage. *Alcazar*, 982 S.W.2d at 849–53. Additionally, Regions broadly argues that the question whether an insurer must be prejudiced by late notice under a claims-made insurance policy is an issue of first impression that public policy requires that the Tennessee Supreme Court address.

The final exception that Regions advocates that we should apply in this case is Restatement (Second) of Judgments § 28(2)(b), which claims that a new determination of an issue of law is warranted to avoid the inequitable administration of laws.[9] Based on its presumption that the Sixth

_____

[7](...continued)

When any of the following circumstances exists, the general rule of [claim preclusion] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant: (f) It is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason, such as the apparent invalidity of a continuing restraint or condition having a vital relation to personal liberty or the failure of the prior litigation to yield a coherent disposition of the controversy.

Restatement (Second) of Judgments § 26(1)(f) (1982).

[8]Restatement (Second) of Judgments § 26 comment j states:

A defendant cannot justly object to being sued on a part or phase of a claim that the plaintiff failed to include in an earlier action because of the defendant's own fraud. Thus, when the defendant takes several articles at one time and on being asked by the plaintiff fraudulently denies taking some of them and suit is brought for the remainder, a judgment in that action does not bar the plaintiff from subsequently maintaining an action for those articles not included in the first action.

Restatement (Second) of Judgments § 26 comment j (1982).

[9] In its brief, Regions cites to *State ex rel Cihlar v. Crawford*, 39 S.W.3d 172 (Tenn. Ct. App. 2001) for the proposition that Tennessee has adopted this exception. In that case, however, now Justice Koch, while sitting for this Court, applied Restatement (Second of Judgments) § 28(2)(b) for the proposition that *issue preclusion* might not bar a new determination where there has been an intervening change in the applicable law. *Crawford*, 39 S.W.3d at 179. Regions does not cite to any Tennessee case, nor do we find any, where a court failed to apply claim preclusion to avoid

(continued...)

-17-

Circuit erred, Regions argues that barring its claim would be an inequitable application of law because Regions would somehow be bound by a different law than any other party insured by a claims-based policy.

We believe, however, that Tennessee has a long-standing tradition in upholding judgments. We, therefore, decline Regions' invitation to adopt and apply any of these three exceptions to claim preclusion. As the Tennessee Supreme Court has stated,

> [t]he policy rationale in support of Res Judicata is not based upon any presumption that the final judgment was right or just. Rather, it is justifiable on the broad grounds of public policy which requires an eventual end to litigation. Akin to statutes of limitations, the doctrine of Res judicata is a 'rule of rest' and 'private peace'. . . .

> . . . . It is not material on this point whether the finding of the jury was Right or not in the former suit. That cannot be questioned any more between the same parties or their privies. Right or wrong the question was finally closed, unless a new trial had been obtained in the same suit. This rule is not alone for the benefit of the parties litigant, to put an end to strife and contention between them, and produce certainty as to individual rights, but it is also intended to give dignity and respect to judicial proceedings, and relieve society from the expense and annoyance of indeterminable litigation about the same matter.

*Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976) (internal citations omitted).

## V. Discovery

Regions' final argument is that the trial court should not have granted Summary Judgment before Regions conducted discovery. In its Motion to Compel Discovery Regions requested records of the dealings between Marsh and the excess carriers. As we have previously discussed, when a party submits a properly supported motion for summary judgment, the burden shifts to the nonmoving party to establish the existence of disputed material facts. *Rains v. Bend of River*, 124 S.W.3d 580, 587–88 (Tenn. Ct. App. 2003).

> [Nonmoving] parties may deflect a summary judgment motion challenging their ability to prove an essential element of their case by (1) pointing to evidence either overlooked or ignored by the moving party that creates a factual dispute, (2)

---

[9](...continued)
the "inequitable administration of laws."

rehabilitating evidence challenged by the moving party, (3) producing additional evidence that creates a material factual dispute, or (4) submitting an affidavit in accordance with Tenn. R. Civ. P. 56.07 requesting additional time for discovery.

*Id.* (citing *Staples v. CBL & Assoc., Inc.*, 15 S.W.3d 83, 88-89 (Tenn. 2000) and *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)). Where, as here, a party seeks to continue a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56.07, we review the trial court's refusal to grant a continuance for an abuse of discretion. *Gilchrist v. Aristorenas*, No. W2007-01919-COA-R3-CV, 2008 WL 4981103, at *4 (Tenn. Ct. App. 2008) (*no perm. app. filed*).

This Court has stated that "a trial court's decision involving discovery must be viewed in the context of the issues being tried and the posture of the case at the time the request for discovery is made." *Price v. Mercury Supply Co.*, 682 S.W.2d 924, 935 (Tenn. Ct. App. 1984). We, therefore, consider whether the requested discovery would have assisted Regions in responding to Defendant Excess Insurer's motion for summary judgment. *See Simmons v. State Farm Gen. Ins. Co.*, No. W2003-02643-COA-R3-CV, 2004 WL 2715341, at *5 (Tenn. Ct. App. 2004) (*no perm. app. filed*). Regions' request to discover records of the dealings between Marsh and Defendant Excess Insurers relates solely to whether Regions gave simultaneous notice to Defendant Excess Insurers through Marsh as a dual agent. As we have discussed throughout this opinion, however, Marsh's status as a dual agent, has no bearing upon the res judicata effect of the federal court action. Because the requested discovery, therefore would not have aided Regions in opposing Defendant Excess Insurers' motion for summary judgment, we find that the trial court acted within its discretion in ruling on the motion for summary judgment before compelling discovery.

## VI. Judicial Estoppel

Defendant Excess Insurers asserts an additional issue: that Regions should be judicially estopped from claiming that Marsh was Defendant Excess Insurers' agent. In federal court Regions claimed that Marsh was its agent. Defendant Excess Insurers asserts that it is inconsistent and contradictory for Regions to now claim that Marsh was Defendant Excess Insurers' agent.

The doctrine of judicial estoppel provides that

a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had or was chargeable with, full knowledge of the facts, and another will be prejudiced by this action.

*Obion County v. McKinnis*, 364 S.W.2d 356, 357 (Tenn. 1962). Regions does not assert in this case that Marsh was *not* its agent; rather, Regions asserts that Marsh was both it and Defendant Excess Insurers' agent. Tennessee recognizes that a person can be a dual agent. *See Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 344 (Tenn. 2002). We do not find that Regions' argument that Marsh was Defendant Excess Insurers' agent is contrary or inconsistent with its assertion in the District Court that Marsh was its agent.

## Conclusion

In light of the foregoing, we affirm the judgment of the trial court. Costs of this appeal are taxed to the Appellant, Regions Financial Corporation, and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE