# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
April 13, 2016 Session

## LINDA DIANE COBB v. STATE OF TENNESSEE, ET AL.

**Appeal from the Circuit Court for Maury County**
**No. 13757     Robert Lee Holloway, Jr., Judge**
_____

**No. M2014-01755-COA-R3-CV – Filed April 17, 2017**
_____

The plaintiff filed suit alleging discriminatory and harassing practices violative of the Tennessee Human Rights Act.  The defendants moved for summary judgment, and the trial court dismissed the plaintiff's claims, holding that the defendants had negated essential elements of the plaintiff's claims.  On appeal, the plaintiff argues that the trial court erred in failing to allow for additional discovery before ruling on the request for summary judgment.  The plaintiff also argues that the trial court failed to address all her claims and that genuine issues of material fact precluded summary judgment.  We conclude that the trial court properly granted summary judgment.  Therefore, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S. and ARNOLD B. GOLDIN, J., joined.

Heather Moore Collins and Anne Hunter Williams, Brentwood, Tennessee, for the appellant, Linda Diane Cobb.

Jeffrey M. Beemer and Joseph K. McKinney, Nashville, Tennessee, for the appellees, Maury County, Tennessee, and Maury County Health Department.

Herbert H. Slatery III, Attorney General and Reporter, Andrée S. Blumstein, Solicitor General, and Rachel A. Newton, Assistant Attorney General, for the appellees, State of Tennessee, Elizabeth Cook, and Constance Baker.

# OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

Linda Diane Cobb started work as a Public Health Office Assistant ("PHOA")[1] for the Maury County Health Department in January 2009. Her direct supervisor was Constance Baker. Ms. Baker, in turn, was supervised by Elizabeth Cook, the health department director.[2]

Ms. Baker, who is African-American, supervised a total of seven PHOAs at the Health Department. Ms. Cobb and Ms. Cook are both Caucasian.

On March 22, 2011, Ms. Cobb filed suit in the Circuit Court for Maury County, Tennessee, against the State of Tennessee, Maury County, the Maury County Health Department, Ms. Cook, and Ms. Baker. Ms. Cobb alleged that she had been discriminated against because of her race and forced to work in a hostile work environment. Specifically, she asserted that two of her co-workers, Keybra Martin, an African-American, and Edna Hernandez, a Latina, received preferential treatment in that they were not required to follow the same workplace rules as the remaining PHOAs. Her complaint alleged that the defendants' conduct violated the Tennessee Human Rights Act. *See* Tenn. Code Ann. §§ 4-21-101 to -1004 (2015 & Supp. 2016).

### A. MS. COBB'S DEPOSITION

During her deposition, Ms. Cobb elaborated on her discrimination and harassment claims. She maintained that all PHOAs should be treated the same but that Ms. Baker gave two of her co-workers, Ms. Martin and Ms. Hernandez, preferential treatment. As Ms. Cobb defined it, discrimination was "[a]llowing another employee to do something they want to do just because you're friends and black." She claimed Ms. Baker favored Ms. Martin and Ms. Hernandez because of their race or ethnicity even though she conceded that another African-American PHOA did not receive any special treatment.

Ms. Cobb complained that Ms. Martin and Ms. Hernandez were consistently treated better than the other PHOAs. For example, Ms. Martin was allowed to move to a different desk whenever she wished, but Ms. Cobb was twice denied permission to move. Ms. Baker yelled across the room at Ms. Cobb but never yelled at Ms. Martin or

---

[1] According to deposition testimony, a PHOA provides clerical assistance to individuals seeking medical services from the county health department.

[2] The Maury County Health Department is operated by the State of Tennessee in cooperation with Maury County. Although she was employed by Maury County, State employees hired, supervised, and ultimately fired Ms. Cobb.

Ms. Hernandez. Ms. Martin received holiday pay for Martin Luther King Day when Ms. Cobb did not.[3]

According to Ms. Cobb, Ms. Baker corrected her when she made a mistake or violated a workplace policy. By contrast, Ms. Martin and Ms. Hernandez consistently broke the rules, such as returning late from lunch, registering patients in the wrong order, and using their cell phones at work, with no apparent consequences. Ms. Cobb claimed that, even though she reported her co-workers' infractions to her supervisors, as far as she was aware, they were never disciplined. Ms. Cobb explained that, because Ms. Martin and Ms. Hernandez did not perform their jobs properly, it created more work for the remaining employees, which she viewed as harassment.

When asked whether the harassment she experienced was based on race, at one point, Ms. Cobb said it was not. She admitted that, to her knowledge, no one at work ever said anything racist to her or about her. In fact, she never heard any workplace comments about white people. She agreed that Ms. Martin had never said anything threatening, racial, or derogatory to her.

In March 2010, Ms. Cobb filed a formal written complaint with the State. In her complaint, Ms. Cobb described the myriad ways in which her two co-workers were favored. She also claimed that she had observed Ms. Baker, Ms. Martin, and Ms. Hernandez comparing the skin color on their arms, which she perceived to be "a racial statement."

Ms. Cobb claimed that, after she filed her complaint, Ms. Baker harassed her with emails. Whenever she reported Ms. Martin's or Ms. Hernandez's mistakes to Ms. Baker, she would receive an email about her own mistakes. She stated that she felt harassed by the sheer volume of emails she received from Ms. Baker even though she admitted that many of the emails were legitimate.

Although Ms. Cobb never filed a formal complaint with Maury County, in March 2011, she did verbally complain to Dana Gibson in the Maury County Human Resources Department about an email from Ms. Baker. Ms. Gibson investigated but found Ms. Cobb's complaint to be without merit.

Ms. Cobb related a specific incident in April 2010 that she found discriminatory. According to Ms. Cobb, Ms. Baker spoke to her after a patient complained that a "white girl with long dark hair" had been rude. Ms. Cobb felt that Ms. Baker's use of the patient's description was a discriminatory racial stereotype. Because another PHOA also fit the patient's description, Ms. Cobb believed that Ms. Baker's assumption that she was the PHOA in question was in retaliation for filing her complaint.

---

[3] She acknowledged that another Caucasian PHOA was also paid for the holiday.

3

Then, in early November 2010, another incident occurred that Ms. Cobb felt was overtly racial. Ms. Cook had a meeting in her office with Ms. Cobb and two other Caucasian PHOAs. According to Ms. Cobb, Ms. Cook explained that a report had been filed indicating that all of them, including Ms. Cook, had been disrespectful of Ms. Baker, Ms. Hernandez, and Ms. Martin. Ms. Cook stated that they should always be polite and respectful. When questioned by the PHOAs present, Ms. Cook responded that the civil rights laws were enacted to protect minorities and indicated that white employees had no rights.

Ms. Cobb maintained that she was a good employee and always performed her job to the best of her ability. Her pay rate never decreased, and she was never demoted. She conceded that there were no negative changes to her job position or duties because of retaliation, harassment or racial discrimination. She claimed, however, that she was forced to take two months of unpaid leave because her work environment adversely affected her health. Although Ms. Baker was replaced as the PHOA supervisor approximately six weeks before the deposition, Ms. Cobb stated it was too soon to know whether the workplace environment had improved.

## B. Ms. Cobb's Termination

In December 2011, a few months prior to her deposition, Ms. Cobb received a written warning for violating the Health Department's Health Insurance Portability and Accountability Act ("HIPAA") policy.[4] According to Ms. Cobb, she viewed a patient record in an attempt to verify whether Ms. Martin and Ms. Hernandez had violated HIPAA, and she was reprimanded for her unauthorized access.

During discovery, Ms. Cobb produced a large volume of documents that she claimed supported her discrimination claim. Ms. Cobb explained that, when she filed her formal complaint, she was told she needed documentation. Thus, she began printing certain screens from her work computer that she believed demonstrated the poor work performance and the ongoing policy violations by Ms. Martin and Ms. Hernandez. The patient registration screens and other portions of patient files that she printed contained patient-identifying information, such as names, birth dates, and social security numbers. She kept the documents in a locker within the Health Department, although at some point she took the documents home. She testified that she showed the documents to Pam Busby in the State Human Resources Department. She also gave the documents to her attorney, who produced them in discovery.

---

[4] The Health Insurance Portability and Accountability Act of 1996, more commonly known as HIPAA, was designed to ensure the confidentiality of health information. *See* 42 U.S.C.A. § 1320d-6 (2012) (penalizing the wrongful disclosure of individually identifiable health information).

4

Ms. Cobb acknowledged that "in a normal situation" disseminating this patient information "would be a HIPAA violation," but she felt her actions were justified in order to document her claims. Ms. Cobb acknowledged that she was prohibited from removing patient information from the Health Department.

Just over a month after she gave her deposition, on July 13, 2012, Ms. Cobb's employment was terminated for repeated HIPAA violations.

### C. THE COUNTY'S SUMMARY JUDGMENT MOTION

Maury County and the Maury County Health Department (collectively the "County Defendants") filed a motion for summary judgment on October 23, 2012. The County Defendants claimed that they were entitled to summary judgment because the plaintiff could not establish (1) that she had suffered an adverse employment action, an essential element of her reverse racial discrimination claim, or (2) that she was subjected to a hostile work environment actionable under the Tennessee Human Rights Act. As required by Rule 56.03 of the Tennessee Rules of Civil Procedure, the County Defendants filed a statement of undisputed material facts with specific citations to the record. They also filed portions of the depositions of Ms. Cobb, Ms. Baker, and Ms. Cook and affidavits from Dana Gibson and Ms. Cook.

One day before the hearing on the motion, Ms. Cobb filed a response and a copy of her deposition. While Ms. Cobb responded to the County Defendants' statement of undisputed material facts, she only provided citations to the record for two disputed facts.

The trial court determined that Ms. Cobb had admitted all of the facts asserted by the County Defendants except for two. Because her response to the County Defendants' motion contained nine factual statements supported by citations to the record, the court also considered whether those facts established a genuine issue that would preclude the grant of summary judgment. After considering the evidence presented, the court granted summary judgment to the County Defendants.

### D. THE STATE'S SUMMARY JUDGMENT MOTION

The State of Tennessee, Constance Baker, and Elizabeth Cook (collectively the "State Defendants") filed a motion for summary judgment on May 20, 2013. To support their motion, the State Defendants relied upon the filings of the County Defendants, including the County Defendants' statement of undisputed material facts.

For her part, Ms. Cobb adopted the materials she had previously filed in response to the County Defendants' motion and filed her own affidavit as well as the affidavits of three co-workers. Ms. Cobb also filed another response to the County Defendants' statement of undisputed material facts.

Before the motion was argued, Ms. Cobb sent a letter to the trial court, without the knowledge of her attorney, explaining that the State Defendants had not responded to her discovery requests. In the letter, Ms. Cobb asked the court to deny the summary judgment motion and compel the State Defendants to respond to discovery.

The trial court denied the State Defendants' motion because it was not properly supported as required by Rule 56 of the Tennessee Rules of Civil Procedure. Thereafter, the State Defendants filed a new, properly supported, motion for summary judgment.

Ms. Cobb responded to the State Defendants' second motion and to their statement of undisputed material facts. She denied four of the facts asserted by the State Defendants but did not support her denials with citations to the record. The court determined that three of the facts that Ms. Cobb denied were properly supported by the State Defendants' citations and were therefore undisputed.

After considering the evidence, the court granted the State Defendants' motion for summary judgment on May 23, 2014. In granting both motions for summary judgment, the court determined that the defendants had negated an essential element of Ms. Cobb's claims for reverse discrimination and hostile work environment. Specifically, the court held as follows:

> The Court finds the Defendants have negated an essential element of the Plaintiff's reverse discrimination claim, i.e. that there was racially motivated conduct that constituted an unreasonably abusive or offensive work-related environment or adversely affected the reasonable employee's ability to do her job. The burden of production shifted to Plaintiff to show that there is a disputed issue of material fact as to whether there was conduct that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. Plaintiff has failed to show there are such disputed material facts. Plaintiff was never disciplined, demoted, or transferred. Plaintiff does not know if any other PHOAs were disciplined or docked time when they were late or whether they were excused in advance. The question and answers on page 61 best summarize the proof before the Court on summary judgment. When Ms. Cobb was asked in regards to alleged policy violations by other PHOAs: "How is that harassment or discrimination against you based on race?" Ms. Cobb's answer was: "It's not based on race." At most, she has shown she did not approve of the way the Maury County Health Department was operated.

6

## II. DISCUSSION

As we perceive the issues, Ms. Cobb has three main contentions on appeal: (1) the trial court erred in dismissing her complaint with prejudice without addressing a claim of retaliation; (2) the trial court erred in not granting a continuance for further discovery or denying the motions for summary judgment under Rule 56.07 of the Tennessee Rules of Civil Procedure; and (3) the trial court erred in granting summary judgment in light of evidence of an adverse employment action and racially motivated workplace harassment.

### A. CLAIMS BEFORE THE COURT

An order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not a final judgment that is appealable as of right. *See* Tenn. R. App. P. 3(a). But Rule 3(a) of the Tennessee Rules of Appellate Procedure permits parties to appeal an order that does not adjudicate all of the claims, rights, and liabilities of all parties if the trial court certifies its judgment as final under Rule 54.02 of the Tennessee Rules of Civil Procedure. *Id.*

Ms. Cobb argues that the trial court erred in dismissing her amended complaint with prejudice because the court's summary judgment orders did not address claims of retaliation. In this case, the trial court did not certify its judgment as final under Rule 54.02, so in effect, Ms. Cobb claims that the she had no right to pursue this appeal and that we lack subject matter jurisdiction. *See Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990) ("Unless an appeal from an interlocutory order is provided by the rules or by statute, appellate courts have jurisdiction over final judgments only.").

After reviewing the amended complaint, we conclude that Ms. Cobb did not raise a retaliation claim and that the court's judgment was final. The amended complaint did not allege or even mention the word "retaliation," only that Ms. Cobb was discriminated against because of her race and subjected to a hostile work environment. The claims are distinct with different elements. *See, e.g.*, *Frye v. St. Thomas Health Servs.*, 227 S.W.3d 595, 602-613 (Tenn. Ct. App. 2007) (evaluating plaintiff's claims for hostile work environment, age discrimination, and retaliation under the Tennessee Human Rights Act). The amended complaint goes on to allege that "[t]he defendants [sic] conduct violates the Tennessee Human Rights Act 4-21-101 et seq."

Ms. Cobb's general reference to the Tennessee Human Rights Act ("THRA") is insufficient to articulate a claim for retaliation. The THRA is a "comprehensive anti-discrimination statute," enacted to "[s]afeguard all individuals within the state from discrimination because of race, creed, color, religion, sex, age or national origin in connection with employment." Tenn. Code Ann. § 4-21-101(a)(3) (2015). The THRA prohibits discrimination "against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color,

religion, sex, age or national origin." *Id.* § 4-21-401(a)(1) (2015); *Goree v. United Parcel Serv., Inc.*, 490 S.W.3d 413, 426 (Tenn. Ct. App. 2015). The Act also prohibits retaliation "against a person because such person has opposed a practice declared discriminatory by this chapter or because such person has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing under this chapter." Tenn. Code Ann. § 4-21-301(a)(1) (2015).

Because the THRA prohibits a broad range of actions, Ms. Cobb was required either to cite the specific statutory provision violated or allege sufficient facts to put the defendants and the court on notice that her claims included a claim for retaliation. Tenn. R. Civ. P. 8.05(1). Even under Tennessee's liberal notice pleading standard, the plaintiff must state the "facts upon which a claim for relief is founded." *W & O Const. Co., Inc. v. City of Smithville*, 557 S.W.2d 920, 922 (Tenn. 1977); *see also Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 427 (Tenn. 2011).

Ms. Cobb argues that she was excused from having to allege facts sufficient to provide notice of a retaliation claim based on the continuing violation doctrine. We disagree. The doctrine has no application in this context. "The continuing violation doctrine essentially allows a plaintiff to bring a claim for discriminatory conduct that occurs outside the limitations period if the discriminatory conduct is sufficiently related to conduct occurring within the limitations period." *Booker v. The Boeing Co.*, 188 S.W.3d 639, 643 (Tenn. 2006). The focus is on the relationship between prior discriminatory acts and the acts that occurred within the limitations period, not later ones. *See Frazier v. Heritage Fed. Bank for Sav.*, 955 S.W.2d 633, 637-38 (Tenn. Ct. App. 1997).

B. REQUEST FOR CONTINUANCE OR DENIAL UNDER RULE 56.07

Rule 56.07 of the Tennessee Rules of Civil Procedure is intended to prevent the "premature grant of summary judgment" before sufficient time for discovery has elapsed. *Kenyon v. Handal*, 122 S.W.3d 743, 753 n.7 (Tenn. Ct. App. 2003). Under this rule, the non-moving party may respond to a summary judgment motion by filing an affidavit explaining why that party cannot present material facts necessary to oppose the motion. Tenn. R. Civ. P. 56.07. The court, in its discretion, may deny the pending motion, order a continuance to permit further discovery, or "make such other order as is just." *Id.*

In her brief, Ms. Cobb argues both that the trial court should have ordered the State Defendants to comply with discovery before granting their motion for summary judgment or that the trial court should have denied all motions for summary judgment under Rule 56.07. As noted above, after the State Defendants filed their first motion for summary judgment, Ms. Cobb sent a letter to the court complaining that the State Defendants had not responded to her discovery requests and requesting that the motion be denied.

8

We find her arguments to be unavailing. To the extent that Ms. Cobb's letter might be considered a request for a continuance or denial of the State Defendants' first motion for summary judgment under Rule 56.07,[5] no such request was made in response to the second motion for summary judgment filed by the State Defendants. And, tellingly, trial counsel made no mention of Ms. Cobb's letter, outstanding discovery, or the need for a continuance at oral argument on the State Defendants' motion.

Second, even if Ms. Cobb's letter had been filed in response to the State Defendants' second motion for summary judgment, the letter failed to explain how the discovery propounded to the State Defendants or how additional discovery would have assisted Ms. Cobb in responding to the motion for summary judgment. Her argument on appeal is no more enlightening on this point. Over two years had elapsed between the filing of the Ms. Cobb's complaint and the State Defendants' first motion for summary judgment; absent further explanation, this strikes us as a sufficient time period for Ms. Cobb to obtain any information she required. Under these circumstances, we conclude that the trial court acted within its discretion in ruling on the State Defendant's motion for summary judgment. *See Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 401 (Tenn. Ct. App. 2009) (reviewing the denial of a continuance based on whether the requested discovery would have assisted the non-moving party in responding to the motion for summary judgment).

## C. THE GRANT OF SUMMARY JUDGMENT

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party moving for summary judgment has "the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If the moving party satisfies its burden, the burden shifts to the nonmoving party to "demonstrate . . . that there is a genuine, material fact dispute to warrant a trial." *Id.*

In this case, the parties moving for summary judgment did not bear the burden of proof at trial. The burden-shifting analysis to be employed by courts tasked with deciding a motion for summary judgment in such situations is the same as that employed

---

[5] A response to a motion for summary judgment under Rule 56.07 requires the filing of an affidavit. Tenn. R. Civ. P. 56.07. Ms. Cobb's letter contained neither an oath nor a declaration made under penalty of perjury. *See Kenyon*, 122 S.W.3d at 752 n.6 (explaining that an affidavit is a written statement signed under oath); Tenn. R. Civ. P. 72 ("[A]n unsworn declaration made under penalty of perjury may be filed in lieu of an affidavit . . . .").

in the federal system. "[T]he moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015), *cert. denied*, 136 S. Ct. 2452 (2016).[6] Satisfying this burden requires more than a "conclusory assertion that summary judgment is appropriate," rather the movant must set forth specific material facts as to which the movant contends there is no dispute. *Id.* If a motion for summary judgment is properly supported, the nonmoving party must then come forward with something more than the allegations or denials of her pleadings. *Id.* at 265.

Something more might include the nonmoving party pursuing one or more of the following options:

> (1) pointing to evidence overlooked or ignored by the moving party that establishes a material factual dispute, (2) . . . rehabilitating the evidence attacked in the moving party's papers, (3) . . . producing additional evidence showing the existence of a genuine issue for trial, or (4) submitting an affidavit explaining why further discovery is necessary . . . .

*Byrd*, 847 S.W.2d at 215 n.6 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331-34 (1986)); *see also McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). In pointing to evidence or rehabilitating the evidence or producing additional evidence, however, the nonmoving party must include specific citations to the record. Tenn. R. Civ. P. 56.03. The potential consequences of failing to do so are significant.

A trial court has the discretion to refuse to consider the factual contentions of a party who fails to comply with Rule 56 even if those facts are ascertainable from the record. *Owens v. Bristol Motor Speedway, Inc.*, 77 S.W.3d 771, 774 (Tenn. Ct. App. 2001). Thus, the trial court may deem the facts asserted in the moving party's statement of material undisputed facts admitted "in the absence of a statement controverting them by the opposing party." *Holland v. City of Memphis*, 125 S.W.3d 425, 428-29 (Tenn. Ct. App. 2003).

---

[6] We note, as did Ms. Cobb in her brief, that *Rye* did not address the continuing validity of either *Gossett v. Tractor Supply Co.*, 320 S.W.3d 777 (Tenn. 2010) or *Kinsler v. Berkline, LLC*, 320 S.W.3d 796 (Tenn. 2010). *See Rye*, 477 S.W.3d at 264 n.11. In *Gossett* and *Kinsler*, our Supreme Court "abandoned the burden-shifting mechanics set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), for use at the summary judgment stage of employment discrimination and retaliation cases . . . ." *Id.* at 260. As discussed more fully below, because of the concessions and admissions made by Ms. Cobb in response to the motions for summary judgment and her failure to comply with Rule 56, the distinction between the burden-shifting analysis for employment discrimination and retaliation cases pre- and post-*Rye* does not impact our analysis. We would reach the same result applying *Gossett* and *Kinsler* or *Rye*.

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. Accordingly, we must review the record de novo and make a fresh determination of whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

1. Reverse Racial Discrimination

With the foregoing in mind, we must determine whether Ms. Cobb could establish a prima facie case of reverse racial discrimination. "To establish a prima facie claim of discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) she was treated differently than similarly situated employees outside of her protected class." *Hawthorne v. Univ. of Tennessee Health Sci. Ctr.*, 203 F. Supp. 3d 886, 891 (E.D. Tenn. 2016); *see also White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008).[7] In a case involving allegations of reverse racial discrimination, the first element must be met with proof of "background circumstances" indicating that the defendant employer is the "unusual employer who discriminates against the majority." *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985) (*quoting Parker v. Baltimore and Ohio R.R. Co.*, 652 F.2d 1012, 1017 (D.C. Cir. 1981)).

Both sets of defendants moved for summary judgment on the ground that Ms. Cobb had not suffered an adverse employment action. Proof of an adverse employment action is necessary "[t]o avoid lawsuits based on 'trivial workplace dissatisfactions.'" *Regnier v. Metro. Gov't of Nashville*, No. M2004-00351-COA-R3-CV, 2006 WL 1328937, at *8 (Tenn. Ct. App. May 11, 2006) (quoting *White v. Burlington Northern & Santa Fe R. Co.*, 364 F.3d 789, 795 (6th Cir. 2004)). Our Supreme Court has defined an adverse employment action as a "material and adverse change in the terms and conditions of employment." *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 707 (Tenn. 2000) *abrogated on other grounds by Gossett v. Tractor Supply Co.*, 320 S.W.3d 777 (Tenn. 2010); *see also Frye*, 227 S.W.3d at 610. Possible adverse employment actions include "termination of employment; demotion evidenced by a decrease in wage or salary, by a less distinguished title, or by a material loss of

---

[7] Because the THRA was enacted to "[p]rovide for execution within Tennessee of the policies embodied" in federal civil rights laws, Tennessee courts consider federal case law as guidance when analyzing a THRA claim. Tenn. Code Ann. § 4-21-101(a)(1); *Ferguson v. Middle Tennessee State Univ.*, 451 S.W.3d 375, 380-81 (Tenn. 2014); *Weber v. Moses*, 938 S.W.2d 387, 390 (Tenn. 1996).

employment benefits; or a significant reduction of material responsibilities." *Barnes*, 48 S.W.3d at 707.

Ms. Cobb admitted that her pay or benefits were never reduced, she was never demoted, and there were no negative changes to her job position or duties because of retaliation, harassment, or racial discrimination. On appeal, Ms. Cobb argues that the termination of her employment after her deposition was the adverse employment action. While it would appear obvious that termination is a "material and adverse change in the terms and conditions of employment," her attorney conceded in the trial court that her termination was not a relevant adverse employment action.

Defendants asserted, and Ms. Cobb admitted, that it was undisputed that Ms. Cobb was terminated solely because of HIPAA violations.[8] If there was any confusion, Ms. Cobb's attorney clarified the point during oral argument on the State Defendants' motion for summary judgment. He acknowledged that he could not argue that the "firing was part of this discrimination."[9] Instead, he argued that Ms. Cobb had met the requirement of showing an adverse employment action through proof that Ms. Cobb "was not able to simply do her job when she wanted to and not do her job as she observed Edna Hernandez and Keybra Martin being allowed to do." Such complaints amount to "trivial workplace dissatisfactions," not "material and adverse change[s] in the terms and conditions of employment." *Barnes*, 48 S.W.3d at 707; *Regnier*, 2006 WL 1328937, at *8.

We conclude, therefore, that the trial court properly granted defendants summary judgment on her reverse racial discrimination claim. By admitting or conceding that her termination was not an adverse employment action, she could show nothing more than trivial workplace dissatisfactions.

---

[8] The County Defendants asserted that it was undisputed that "the Plaintiff was terminated for violations of HIPAA during her employment, the most recent violation after receiving written warning that failure to follow the applicable policy could result in dismissal. This was the sole reason for her termination." Plaintiff responded: "The Plaintiff would admit that the warning letter contains the information set forth in the question." When the State Defendants made the identical assertion in their statement of undisputed material facts, Plaintiff admitted the statement was undisputed but claimed it was irrelevant.

[9] Ms. Cobb's counsel explained to the court:

The HIPAA stuff, Your Honor, has not been made part of this lawsuit with the exception that it was Ms. Cobb's attempt to showing the discrimination, itself. All of the actions that happened after that point, Your Honor, I would argue are irrelevant to the case that we have at hand. We can't argue that the firing was part of this discrimination except as it went to Ms. Cobb's attempts to protect her position.

2. Hostile Work Environment

Finally, we consider whether Ms. Cobb demonstrated a genuine material factual dispute with regard to her hostile work environment claim. To establish a prima facie case, she was required to prove: "(1) membership in a protected class; (2) racially motivated conduct that constituted an unreasonably abusive or offensive work-related environment or adversely affected the reasonable employee's ability to do his or her job; and (3) the employer knew or should have known of the harassment and failed to respond with prompt and appropriate corrective action." *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 31-32 (Tenn. 1996).

Our focus is on the second element. To satisfy that element, Ms. Cobb must show racially motivated conduct that unreasonably interfered with her work performance or created an "intimidating, hostile, or offensive working environment." *Id.* at 31 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). Although the absence of racially derogatory conduct does not bar a racial harassment claim, the plaintiff must show discriminatory conduct based on race. *Campbell*, 919 S.W. 2d at 32. "The key inquiry is whether an employee, or a group of employees, of one race has been subjected to disadvantageous terms or conditions of employment to which members of another race are not exposed." *Id.*

The conduct at issue must be both subjectively and objectively hostile or abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993); *see also Campbell*, 919 S.W.2d at 31. The "objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris*, 510 U.S. at 23)). "While no single factor is required or conclusive, considerations relevant to the determination include, but are not limited to, the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with an employee's work performance; and the employee's psychological well-being." *Campbell*, 919 S.W.2d at 32. Thus, courts must use "common sense, and an appropriate sensitivity to social context," to ascertain whether a reasonable person in the plaintiff's position would find the workplace environment abusive. *Oncale*, 523 U.S. at 82.

Ms. Cobb contends that the trial court erred in finding that she could not establish that the conduct at issue was based on race or that the alleged harassment was sufficiently severe or pervasive to create an abusive environment.[10] Ms. Cobb, however, conceded in

---

[10] Because Ms. Cobb conceded that the alleged workplace harassment was not based on race, we need not consider the severity of her work environment. Even if we were to consider her argument, we note that, once again, she failed to bring the evidence upon which she relies on appeal to the attention of the trial court.

13

the trial court that her harassment was not based on race. *See Frye*, 227 S.W.3d at 603 ("If there is harassment in the work place, the burden is on the plaintiff to establish that such harassment is based upon one's age, race, sex or other protected class characteristic that is prohibited by the civil rights statutes.").

In support of their motion for summary judgment, the State Defendants asserted that it was undisputed that the alleged hostile work environment was not racially motivated, citing Ms. Cobb's admission in her deposition.[11] In response, Ms. Cobb simply denied the assertion with no citation to the record. Based on her response, the trial court deemed the asserted fact undisputed.

Ms. Cobb now claims that her testimony was taken out of context and other portions of her deposition support her claim that the harassment was based on race. But Ms. Cobb neglected to bring this deposition testimony to the attention of the trial court in response to the motions for summary judgment.[12] Belatedly, when the State's motion was argued, Ms. Cobb's attorney asked the court to consider her deposition testimony but failed to direct the court to any specific testimony which he contended created a material factual dispute.

The trial court did not abuse its discretion in refusing to consider unspecified testimony in Ms. Cobb's deposition offered on the day the motion was argued. *See Owens*, 77 S.W.3d at 774. And, under these circumstances, the trial court did not err in deeming the facts asserted in the defendants' statements of material undisputed facts admitted. When faced with properly supported motions for summary judgment, Ms. Cobb simply failed to demonstrate a material factual dispute "by specific citation to the record." Tenn. R. Civ. P. 56.03. The only proof before the court was Ms. Cobb's admission that the hostile work environment was not based on race.

We conclude that the trial court properly granted the defendants summary judgment on her hostile work environment claim. Ms. Cobb could not establish an essential element of her claim. *See Freeman v. Lewisburg Hous. Auth.*, No. M2006-

---

[11] The State Defendants relied on this testimony from Ms. Cobb:

Q. How is that harassment or discrimination against you based on race?

A. It's not based on race.

[12] In support of their motion for summary judgment, the County Defendants argued that the alleged harassment was not based on race by relying on Ms. Cobb's admission that she had never heard any derogatory racial comments in the workplace. In response, Ms. Cobb argued that the harassment was based on race but also cited to the pages in her deposition in which she conceded that the harassment was not based on race.

14

01898-COA-R3-CV, 2008 WL 360607, at *6 (Tenn. Ct. App. Feb. 8, 2008) (affirming the grant of summary judgment to the defendant because the plaintiff failed to show that the hostile work environment was based on race); *see also Cartwright v. Jackson Capital*, No. W2011-00570-COA-R3-CV, 2012 WL 1997803, at *11 n.9 (Tenn. Ct. App. June 5, 2012) (affirming grant of summary judgment when material facts cited on appeal were not brought to the attention of the trial court).

### III. CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court granting summary judgment to both sets of defendants and dismissing the plaintiff's amended complaint with prejudice.

_____
W. NEAL MCBRAYER, JUDGE