Richard WATKINS, Plaintiff–
Appellant,

v.

HILL'S PET NUTRITION, INC.; Colgate–Palmolive Company; and Bill Buescher, Defendants–Appellees;

and

Chris Burt, Defendant.

No. 01–6484.

United States Court of Appeals,
Sixth Circuit.

April 8, 2003.

Before: SILER and BOGGS, Circuit Judges; and STEEH, District Judge.*

PER CURIAM.

Plaintiff Richard Watkins appeals the district court's grant of summary judgment against his federal Family and Medical Leave Act ("FMLA") retaliation claim and his state tortious interference with contract claim. We AFFIRM, though on different grounds than those relied on by the district court.

## I.

Watkins is a former management employee of Hill's Pet Nutrition, Inc. (a wholly-owned subsidiary of Colgate–Palmolive Company). In 1998, Watkins's manager, Defendant Bill Buescher, began to make Watkins's employment unpleasant. Specifically, Watkins alleges that Buescher (1) treated Watkins unfairly in shift assignments, (2) made a comment to two team leaders to "avoid picking up Watkins's bad habits," (3) told co-workers that Watkins's FMLA leave was due to work-related stress, (4) ridiculed Watkins's work performance in front of his peers, and (5) gave Watkins an article entitled "Pink Slips in Good Times." Watkins alleges that Buescher did these things in order to push Watkins out of the company because Watkins knew about Buescher's involvement with an allegedly fraudulent insurance claim.

In March 2000, having "had it," Watkins talked with Buescher about the possibility of severance from his employment. Watkins also consulted a doctor, who placed him on six weeks of FMLA leave. In April, Watkins briefly returned to work, but resumed FMLA leave after Buescher threatened to move him to third shift. On May 10, 2000, Watkins's FMLA leave concluded, and he again returned to work.

Watkins remained unhappy with his work. In May, he received a negative performance evaluation; in June, he was suspended pending an investigation of allegedly racist comments he made. Watkins then requested a severance package, which Hill's subsequently offered. On July 7, 2000, in a phone conversation recorded by Watkins, a Hill's employee said the following in response to Watkins's concerns about the terms of the severance package:

> . . . I don't want to enter into a protracted debate about [the alleged racist comments] or your attendance or anything

* The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

like that. That's not the issue here. The issue is ... you said you weren't happy, you wanted some help in moving on, and that's where we're at.

... I'm not sure I can extend the offer [beyond] today. I can tell you that effective today you're terminated.

Later in the conversation, the two agreed to talk further about the severance issue on the following Monday. When Watkins did not contact Hill's on Monday, Hill's sent Watkins a letter extending the severance offer deadline. The letter, dated July 10, 2000, noted that if Watkins chose to withdraw his request for severance, Hill's would assume that he was no longer interested in leaving and would expect him to "return to work as normally scheduled on Friday July 14, 2000, and to assume [his] regular duties."

Watkins never returned to work, but instead filed suit in the Western District of Kentucky. Among other claims, Watkins's complaint alleges FMLA retaliation by Hill's and tortious interference with contract by Buescher. The district court granted the defendants' motion for summary judgment on these claims, finding that (1) although Watkins had presented a triable issue of fact as to whether the July 7 conversation constituted an "adverse employment action," his FMLA claim does not survive summary judgment because no causal relationship existed between Watkins's FMLA leave and termination, and (2) because at all relevant times Buescher was acting within the scope of his duties as a Hill's manager, he cannot be liable for interfering with Watkins's contract with Hill's.

## II.

This court reviews a district court's grant of summary judgment *de novo*. *See Smith v. Wal–Mart Stores, Inc.,* 167 F.3d 286, 289 (6th Cir.1999). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ In order to establish a prima facie case of FMLA retaliation, a plaintiff must show "(1) he availed himself of a protected right under the FMLA. (2) he was adversely affected by an employment decision ..., and (3) the proximity in time between [his] request for leave and his discharge [establishes] a causal connection between his exercise of a right under the FMLA and the adverse employment decision." *Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 314 (6th Cir.2001). Here, Watkins has not suffered an adverse employment action. Specifically, because the July 10 letter gave Watkins the opportunity to withdraw his request for severance and return to work, no reasonable jury could find that Watkins was fired.[1]

■ Under Kentucky law, the elements of an action for intentional interference by a third person with a contractual relationship are: (1) a valid existing contract, (2) defendant's knowledge of this contract, (3) an intentional unjustified inducement to breach the contract, (4) a subsequent breach, and (5) resulting damage to the plaintiff. *See Walt Peabody Adver. Serv., Inc. v. Pecora,* 393 F.Supp. 328, 331–32 (W.D. Kentucky 1975) (reviewing the history of this tort in Kentucky and conclud-

---

1. We agree with the district court that Watkins's other proposed actions (threatened shift assignments, negative employment evaluation, and suspension pending investigation) do not meet the standard for "adverse employment action." Watkins did not challenge these decisions on appeal.

ing that Kentucky has adopted the majority rule as stated in the Restatement of Torts, § 766). Viewing the facts in the light most favorable to Watkins, we find no breach of contract. Again, because the July 10 letter gave Watkins the opportunity to withdraw his request for severance and return to work, no reasonable jury could find that Hill's had breached its contract with Watkins.

**AFFIRMED.**