# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 21, 2018 Session

## RANDY ROBERTS v. TENNIER INDUSTRIES, INC.

**Appeal from the Circuit Court for Scott County**
**No. 8956     John D. McAfee, Judge**

---

**No. E2017-00992-COA-R3-CV**

---

This appeal arises from a claim of retaliatory discharge. Randy Roberts ("Roberts") was fired by Tennier Industries, Inc. ("Tennier") for several stated reasons, including that he kept an unmarked bottle of pills at his desk and was insubordinate. Roberts contends that he was, in fact, fired for having complained about a manager who harassed him. Roberts sued Tennier in the Circuit Court for Scott County ("the Trial Court"). Tennier filed a motion for summary judgment asserting that it fired Roberts for valid, non-pretextual reasons. Roberts filed a motion to continue in which he requested more time for discovery in order to probe Tennier's practices in situations similar to his. The Trial Court denied Roberts' motion to continue and granted Tennier's motion for summary judgment. Roberts appeals to this Court. We hold, *inter alia*, that the information for which Roberts sought additional time for discovery could have assisted his case and that the Trial Court erred in denying his motion to continue. We vacate the judgment of the Trial Court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II and W. NEAL MCBRAYER, JJ., joined.

Jessica A. Burke, Whitley City, Kentucky, and Ashley King-Kidd, Oneida, Tennessee, for the appellant, Randy Roberts.

Howard B. Jackson and Ann E. Sartwell, Knoxville, Tennessee, for the appellee, Tennier Industries, Inc.

# OPINION

## Background

On March 28, 2016, Roberts sued his former employer, Tennier, for, among other things, retaliatory discharge. According to Roberts, he was suspended and later fired for complaining about a certain manager, James Bond, who had harassed him. Tennier asserts that Roberts' dismissal had nothing to do with his complaint but rather was based on independent grounds.[1]

Tennier filed its motion for summary judgment on December 29, 2016. In March 2017, Roberts filed a motion to continue pursuant to Tenn. R. Civ. P. 56.04 and 56.07 in which he sought additional time for discovery. Roberts stated in his motion, in part:

> The entirety of this case centers around the actions, and the motivations for those actions, of employees and former employees of Tennier Industries, Inc. Plaintiff Randy Roberts has not had the opportunity to depose the individuals who were largely responsible for the actions at the crux of his complaint. Individuals to be deposed include Lynn Human, Lane Duncan, and Carla Miller. These individuals have information that is central to Mr. Roberts' claims against Tennier Industries. The information these individuals possess and that is expected to be borne out through depositions includes, but is not limited to, information related to Mr. Roberts' exemplary employment records from 2004 through his abrupt termination in 2015, information related to other complaints against plant manager James Bond, the method and manner in which other similar situations were handled by Tennier Industries, the method and manner in which investigations against both James Bond and Randy Roberts were initiated and conducted, and the motives and through processes behind actions taken.
> Due to the schedule of Plaintiff's attorney and a desire to wait until after Plaintiff was deposed by Defendants to undertake his own depositions, Plaintiff has not yet had the opportunity to depose these individuals. This action was filed less than a year ago, and there has been no scheduling order or agreement between the parties regarding the timing of discovery. As such, it is wholly reasonable that Plaintiff has not yet been able to take the depositions vital to his case.

---

[1] Although there was no trial, Roberts filed a Statement of Evidence in the Trial Court. The record on appeal contains no proof of service filed with the Clerk of the Trial Court along with the Statement, contrary to Tenn. R. App. P. 24(c). Therefore, we will not consider it. However, our ultimate conclusion in this appeal would not change even if we were to consider the Statement of Evidence.

Without the opportunity to depose these individuals and introduce the evidence gleaned from those depositions, Mr. Roberts cannot completely and fully respond to Defendant Tennier Industries, Inc.'s Motion for Summary Judgment.

Roberts, in support of his opposition to Tennier's motion for summary judgment, filed the following affidavit:

1. My name is Randy Roberts.

2. I am the Plaintiff in Randy Roberts v. Tennier Industries, Inc., Case No. 8956.

3. The entirety of my case centers around the actions, and the motivations for those actions, of employees and former employees of Tennier Industries, Inc.

4. I have not had the opportunity to depose the individuals who were largely responsible for the actions at the crux of my complaint.

5. Individuals to be deposed include Lynn Human, Lane Duncan, and Carla Miller. These individuals have information that is central to my claims against Tennier Industries. The information these individuals possess and that is expected to be borne out through depositions includes, but is not limited to, information related to my exemplary employment records from 2004 through my abrupt termination in 2015, information related to other complaints against plant manager James Bond, the method and manner in which other similar situations were handled by Tennier Industries, the method and manner in which investigations against both James Bond and myself were initiated and conducted, and the motives and through processes behind actions taken.

6. Due to the schedule of my attorney and a desire to wait until after I was deposed by Defendants to undertake my own depositions, I have not yet had the opportunity to depose these individuals. This action was filed less than a year ago, and there has been no scheduling order or agreement between the parties regarding the timing of discovery.

7. Without the opportunity to depose these individuals and introduce the evidence gleaned from those depositions, I cannot completely and fully respond to Defendant Tennier Industries, Inc.'s Motion for Summary Judgment.

8. FURTHER AFFIANT SAYETH NAUGHT.

Tennier filed its opposition to Roberts' motion to continue, stating as follows, in part:

Plaintiff requests that the Court put off ruling on the motion so that Roberts can conduct deposition discovery. Roberts has had ample time to take discovery and has not done do.

The Complaint in this matter was filed on March 28, 2016. Roberts was deposed on October 4, 2016. The instant motion was filed on December 29, 2016. Roberts has had almost a year in which to depose witnesses, and over two months to do so after the motion for summary judgment was filed. This is more than ample time to conduct depositions.

In addition, the motion for summary judgment was filed well over thirty days before the date of the hearing, in compliance with Rule 56.04, and counsel for Plaintiff confirmed that March 14, 2017 was an acceptable date for the hearing. (Exh. 1, Affidavit of Karalea Longworth.)

Tennier Industries requests that the Court deny the motion for a continuance, and hear and rule upon the motion for summary judgment.

Although no written order regarding the Trial Court's disposition of Roberts' motion to continue is found in the record on appeal, it is plain from the Trial Court's grant of summary judgment to Tennier that the Trial Court denied Roberts' motion to continue. Further, both parties on appeal acknowledge that the Trial Court denied Roberts' motion. In April 2017, the Trial Court entered its final order in which it granted Tennier's motion for summary judgment. The Trial Court stated:

This matter is before the Court on the motion for summary judgment filed by the Defendant pursuant to Rule 56 of the Tennessee Rules of Civil Procedure. After conducting oral argument and reviewing the submissions of the parties, the Court sets out its findings of fact per the standards of Rule 56, conclusions of law, and Order on the motion below.

Findings of Fact

The Defendant employed the Plaintiff as a mechanic it its Sunbright, Tennessee facility. Defendant has a plant and corporate offices in Huntsville, Tennessee, where its administration and human resources functions are located.

On or about March 10, 2015, Defendant's Human Resources Manager, Lynn Human, learned that Plaintiff had stated a concern that the Plant Manager in Sunbright, James Bond, had touched Plaintiff inappropriately. Human visited the Sunbright plant and met with Plaintiff, who confirmed his concern that Bond had touched him improperly by slapping him on the behind.

Human paused the investigation at that point. She instructed Bond not to have further contact with Plaintiff during the investigation. She enlisted the assistance of the Director of Administration, Lane Duncan, with the investigation.

Human and Duncan met with Plaintiff regarding his allegations about Bond. Plaintiff repeated his allegation that Bond had slapped him on the behind about four to five years previous. Plaintiff alleged that Bond had threatened to do so again on a half dozen occasions or so in the following years, but had not done so.

In the course of the investigation, Human and Duncan learned from a former employee that Bond had slapped Plaintiff on the behind several years previous.

Human and Duncan issued Bond a letter that instructed him not to initiate interaction with Plaintiff. Any work instructions or other communication must go through others. Bond signed the letter.

Human and Duncan issued Plaintiff a letter letting him know that Bond had been instructed not to have contact with him, and instructing Plaintiff not to initiate contact with Bond. Plaintiff was dissatisfied and did not sign the letter.

After Bond signed the letter, he did not communicate with, threaten or otherwise bother Plaintiff.

On April 9, 2015, one of Defendant's employees at the Sunbright plant, Floor Supervisor Carla Bunch, initiated a complaint about Plaintiff. Bunch informed Bond that she had a concern. Bond called Human, who went to the Sunbright plant and met with Bunch.

Bunch related to Human two concerns based on information that another employee, Carla Miller, had related to Bunch. One concern was that on the previous day, April 8, 2015, Plaintiff had commented to Miller that he believed Defendant was going to try and get him in trouble by having Bunch file a sexual harassment complaint against him, and that if Bunch did so, Plaintiff would ruin her marriage by stating that she was having an affair. The second was based on a comment from that morning, April 9. After Bunch and Plaintiff's supervisor, JD West, walked by the work area, Miller wondered aloud where they were going, and Plaintiff responded, "Probably to f___ . Nah, JD wouldn't know what to do with that anyway."

Bunch wrote out two statements, which Miller signed, reflecting the concerns just described. Plaintiff denies making the comments. But it is clear that they were reported to Defendant's management.

Human took the statements to Duncan, and the two of them decided to suspend Plaintiff pending investigation. They traveled to the Sunbright plant to meet with Plaintiff for that purpose.

During the meeting when Human and Duncan informed Plaintiff that he was being suspended pending investigation, Plaintiff twice told Duncan to "shut up" and commented that it was a wonder she did not "have horns." These comments were recorded, as Plaintiff recorded the meeting.

Human and Duncan interviewed Bunch, Miller and several other witnesses regarding Bunch's allegations. During the course of the investigation, Miller reported that Plaintiff had called her and asked that she retrieve some medication of his from the workplace. Miller found that there was an unmarked pill bottle screwed to the underside of a table in Plaintiff's work area and it contained four prescription pills. Miller reported this to Human, who in turn reported the matter to the local authorities.

Plaintiff agrees that the unmarked bottle and the pills were his. When questioned about this by Human he said that his medication had been stolen in the past, and that he could not keep it in his truck because his truck would not lock. He also said he needed to keep the remainder of his pills in the marked bottle because of pill counts. He said others knew he kept the pills under his desk.

During the course of the investigation, Human asked others, including JD West and Carla Bunch, whether they knew Plaintiff kept pills in an unmarked bottle under his desk. They denied any such knowledge.

It was also reported during the investigation that Plaintiff had made a threatening comment toward Bond. The report was that Plaintiff had a sawed off broom handle in his work area and desired to strike Bond with it.

At the conclusion of the investigation, Defendant discharged Plaintiff. Defendant gave the following reasons: keeping an unmarked bottle with a controlled substance in it in the workplace; the comments threatening Bunch's marriage and profane remark regarding Bunch and West; the insubordinate conduct toward Duncan (telling her to "shut up" and that it was a wonder she did not "have horns").

Defendant maintained a policy against harassment in the workplace. The policy defines conduct that is not tolerated, and instructs employees with concerns to bring them to human resources. Defendant provided examples of its appropriate responses to complaints during the time before March of 2015.

Plaintiff did not initiate a complaint under the policy. He did state his complaints against Bond when Human asked him whether he had such concerns.

-6-

Conclusions of Law

The Complaint included a claim that Defendant discharged Plaintiff in violation of the Tennessee Disability Act, Tenn. Code Ann. § 8-50-103. At oral argument, Plaintiff conceded this claim.

Plaintiff alleged that Bond's treatment of him constituted unlawful harassment on the basis of sex in violation of the Tennessee Human Rights Act., Tenn. Code Ann. § 4-21-101 ff. This claim fails for three reasons.

There is no evidence that the conduct Plaintiff complained of was based on sex. There is no evidence such conduct was motivated by sexual desire, or by a general hostility toward males in the workplace. Oncale v. Sundowner Offshore Services, Inc., 528 U.S. 75, 80-81 (1998). Therefore, Plaintiff cannot show that the conduct he complains of was "based on sex", which is a required element of a claim of sexual harassment.

The conduct Plaintiff alleged, one incident of touching four or five years previous followed by several occasions of threatening to do so again, does not rise to the level of severity or pervasiveness required to sustain a claim for hostile work environment sex harassment. Id. See also Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 2284 (1998). The harassment claim fails for this additional reason.

Defendant is also entitled to prevail on the defense established by Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257 (1998). That defense requires showing that the employer made reasonable efforts to prevent and correct harassment, and that the employee failed to take advantage of the corrective opportunity available via the policy, or to otherwise avoid harm.

Defendant submitted its policy, as well as uncontradicted evidence showing its efforts to train management and take steps to enforce the policy. Plaintiff never initiated a complaint about Bond's having touched him. The subject came up years later only because someone else brought it to Human's attention. Therefore, he failed to take advantage of the corrective opportunity afforded by Defendant's policy.

Plaintiff also sued for retaliatory discharge, alleging that Defendant discharged him based on his allegations regarding Bond. To establish a prima facie retaliation claim, a plaintiff must show that he or she engaged in protected activity, thereafter suffered an adverse employment action, and a causal connection between the two. If the plaintiff makes that showing, the defendant may submit a legitimate reason for its actions. If the defendant does so, the plaintiff must them present specific evidence in the record that establishes an issue of fact on the question of whether the stated reason was a pretext for retaliation. Kuhn v. Washtenaw County, 709 F.3d

612, 627 (6th Cir. 2013), <u>Goree v. UPS</u>, 490 S.W.3d 419, 434 (Tenn. Ct. App. 2015).  Tenn. Code Ann. § 4-21-311(e).

At oral argument, counsel for Plaintiff alleged that the suspension of him in April was itself a form of retaliation that provided the basis for a claim of retaliation.  The Court concludes that the suspension pending investigation was not an adverse employment action.  <u>Watkins v. Hill's Pet Nutrition, Inc.</u>, 63 Fed. Appx. 185 at fn 1 (6th Cir. 2003).  Therefore, Plaintiff may not sustain a retaliation claim based on the suspension.

With respect to the discharge decision, Plaintiff suggests that the timing of the events establishes an issue of fact with regard to the Defendant's motivation.  The Court finds that where an intervening legitimate cause for an action exists, that dispels the inference of retaliation based on timing.  <u>Kuhn</u>, <u>supra</u>.  The complaint by Bunch, and the insubordination and pills in an unmarked bottle are intervening legitimate causes for employment-related actions that dispel any inference of causation based on timing.

The Court finds that the evidence does not establish the element of a causal connection between Plaintiff's complaint and the discharge decision. In the absence of timing, which is dispelled for the reason just stated, Plaintiff cannot establish the causal connection.

Assuming that Plaintiff could establish a prima facie case of retaliation, the claim fails because the Defendant has submitted legitimate reasons for the discharge that Plaintiff cannot establish were pretexts for discrimination.  In particular, the Court focuses on the insubordinate conduct toward Duncan, and the unmarked pill bottle that contained a controlled substance.

A plaintiff generally may establish pretext by showing that there was no basis in fact for the stated reason, that the stated reason did not motivate the decision, or that the stated reason would not motivate a reasonable employer to take the challenged action.  <u>Johnson v. Univ. of Cincinnati</u>, 215 F.3d 561, 573 (6th Cir. 2000).

Plaintiff cannot establish pretext.  With respect to the comments to Duncan, they are recorded and Plaintiff does not contend that they were not made.  Plaintiff admits that the pills and pill bottle were his, and that the unmarked bottle was screwed underneath a work table in his work area.  In other words, there is clearly a basis in fact for those reasons.

There is no evidence that the stated reasons did not motivate the employer.  Plaintiff argues that the reasons did not motivate the employer. But Plaintiff did not submit evidence in the record on that subject.

The Court finds that insubordination such as that engaged in by Plaintiff and having a controlled substance in an unmarked pill bottle are

reasons that could motivate a reasonable employer to discharge an employee.

Based on the findings of fact and conclusion of law set out above, the Defendant's motion is GRANTED. All claims in the Complaint are dismissed, with prejudice. Costs of court are taxed to Plaintiff, for which execution may issue, if necessary.

Roberts timely appealed to this Court.

### Discussion

Although not stated exactly as such, Roberts raises the following issues on appeal: 1) whether the Trial Court erred in denying Roberts' motion to continue; and, 2) whether the Trial Court erred in granting Tennier's motion for summary judgment as to Roberts' retaliation claim.

As our Supreme Court has instructed regarding appellate review of a trial court's ruling on a motion for summary judgment:

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

* * *

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence

-9-

must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

We first address whether the Trial Court erred in denying Roberts' motion to continue. Initially, we review the elements of the underlying claim. Our Supreme Court has articulated the elements of a retaliation claim such as the one in the present case as follows:

> To prevail on a THRA claim, an employee must prove: (1) that the employee engaged in protected activity; (2) that the employer knew about

the employee's protected activity; (3) that the employer subsequently took a materially adverse action against the employee; and (4) a causal connection between the employee's protected activity and the resulting adverse action. *Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 29 (Tenn. 2011); *Allen*, 240 S.W.3d at 820. . . .  The rationale for the knowledge requirement is that an employer should not be held liable for retaliation when it has no knowledge that the employee has engaged in protected activity.  Matthew W. Green, Jr., *Express Yourself: Striking a Balance Between Silence and Active, Purposive Opposition Under Title VII's Anti–Retaliation Provision*, 28 Hofstra Lab. & Emp. L.J. 107, 131 (2010).  Knowledge of an employee's protected activity can be shown by either direct or circumstantial evidence.  *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993); *Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009).

*Ferguson v. Middle Tennessee State Univ.*, 451 S.W.3d 375, 382 (Tenn. 2014) (footnote omitted).

Our Supreme Court has elaborated upon those kinds of evidence tending to show retaliatory intent, as follows:

Circumstantial evidence that is pertinent and probative on the issue of causation and retaliatory intent includes, but is not limited to, (1) temporal proximity of the adverse action to the complaint, *see Allen*, 240 S.W.3d at 822; (2) a pattern of workplace antagonism following a complaint, *id*.; (3) an employer's failure to adhere to established company policy in dealing with the employee, *see Newcomb v. Kohler Co.*, 222 S.W.3d 368, 391 (Tenn. Ct. App. 2006); (4) "discriminatory treatment when compared to similarly situated employees," *id*.; (5) evidence of a good work history and high or solid performance evaluations of the employee, *cf. Guy*, 79 S.W.3d at 538-39; (6) "sudden and marked changes in an employee's performance evaluations" after the exercise of the employee's protected rights, *Newcomb*, 222 S.W.3d at 391; and (7) "evidence tending to show that the [employer's] stated reason for discharge was false." *Id*.

*Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 29-30 (Tenn. 2011).

It is in this context that we consider whether the Trial Court erred in denying Roberts' motion to continue.  "Where, as here, a party seeks to continue a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56.07, we review the

trial court's refusal to grant a continuance for an abuse of discretion." *Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W3d 382, 401 (Tenn. Ct. App. 2009). This Court has explained:

> Indeed, our Supreme Court has stated:
>
> > Where there is [the] slightest possibility that [the] party opposing [a] motion for summary judgment has been denied [an] opportunity to file affidavits, take discovery depositions or amend, by disposition of motion for summary judgment without 30 day interval following filing of motion, it will be necessary to remand case to cure such error.
>
> *Craven v. Lawson*, 534 S.W.2d 653 (Tenn. 1976). Further, this Court has stated that one method of defeating a properly supported motion for summary judgment is through a request for more discovery:
>
> > [Nonmoving] parties may deflect a summary judgment motion challenging their ability to prove an essential element of their case by (1) pointing to evidence either overlooked or ignored by the moving party that creates a factual dispute, (2) rehabilitating evidence challenged by the moving party, (3) producing additional evidence that creates a material factual dispute, or (4) *submitting an affidavit in accordance with Tenn. R. Civ. P. 56.07 requesting additional time for discovery. Rains v. Bend of the River*, 124 S.W.3d 580, 587-88 (Tenn. Ct. App. 2003) (citing *Staples v. CBL & Assoc., Inc.*, 15 S.W.3d 83, 88-89 (Tenn. 2000); *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).
>
> *Regions Financial Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 401 (Tenn. Ct. App. 2009) (emphasis added). The interest in full discovery, however, must be balanced against the purpose of summary judgment: "[to] provide[] a quick, inexpensive way to conclude cases when there exists no dispute regarding the material facts." *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 13 (Tenn. 2008). Indeed, "[t]he philosophy of summary judgment is to avoid a needless trial in a case where, although the pleadings may indicate disputes over factual issues, facts outside the pleadings if known would clearly show that there is 'no genuine issue as to any material fact.'" *Id*. at 12 (quoting Donald F. Paine, *Recent Developments in Tennessee*

*Procedure: The New Tennessee Rules of Civil Procedure*, 37 Tenn. L. Rev. 501, 516 (1970)).

\* \* \*

[T]his Court has previously held that a trial court's decision to deny additional time for discovery, in order for the non-moving party to meet summary judgment, "must be viewed in the context of the issues being tried and the posture of the case at the time the request for discovery is made." *Regions*, 310 S.W.3d at 401 (citing *Price v. Mercury Supply Co.*, 682 S.W.2d 924, 935 (Tenn. Ct. App. 1984)). Accordingly, a trial court only errs in refusing to grant additional time for discovery prior to the hearing on a motion for summary judgment when the non-moving party can show that "the requested discovery would have assisted [the non-moving party] in responding to [the moving party's] motion for summary judgment." *Regions*, 310 S.W.3d at 401 (citing *Simmons v. State Farm Gen. Ins. Co.*, No. W2003-02643-COA-R3-CV, 2004 WL 2715341, at \*5 (Tenn. Ct. App. Nov. 24, 2004)).

*Cardiac Anesthesia Servs., PLLC v. Jones*, 385 S.W.3d 530, 536-38 (Tenn. Ct. App. 2012).

In *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515 (Tenn. 2010), the Supreme Court discussed the abuse of discretion standard at length, stating:

The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d at 42.

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Beecher*, 312 S.W.3d at 524-25.

The record contains no order reflecting the Trial Court's denial of Roberts' motion. While the question of whether to grant or deny the motion to continue was a discretionary one for the Trial Court to render, we do not know the reasons or the factual basis for why the Trial Court exercised its discretion as it did. It is well-nigh impossible, then, for us to extend deference to the Trial Court's decision. We simply do not know whether the Trial Court took "the applicable law and the relevant facts into account." *Id.*

-14-

We do know that Roberts complied with Tenn. R. Civ. P. 56.07. Roberts' affidavit identified specific individuals he wished to depose and the information to be sought from these individuals. His affidavit also set forth reasonable reasons why these depositions had not already been taken including his attorney's schedule and the order of depositions. The depositions sought by Roberts, with their potential for shedding light on Tennier's motives and practices, could well have assisted his response to Tennier's motion for summary judgment. Of course, it cannot be known for certain whether the evidence Roberts uncovers in the depositions actually will aid his cause. This is one of the reasons it is called discovery. The evidence sought, however, likely would have aided Roberts in responding to Tennier's motion whether it turned out to be favorable or not to his claim.

Regarding whether Roberts waited too long to seek depositions, an argument made by Tennier, we do not find that allowing Roberts additional time would unnecessarily or unjustly drag the case out. Roberts filed suit in March 2016. Tennier filed its motion for summary judgment in December 2016. In March 2017, Roberts filed his motion to continue and supporting affidavit which states legitimate reasons why Roberts had not already taken these depositions. The Trial Court granted summary judgment in April of 2017. The key procedural moves in this case occurred at a relatively expeditious clip. We see neither prejudice to Tennier nor any unwarranted delay in favor of Roberts in allowing additional time for Roberts to take depositions.

For these reasons, the Trial Court erred in denying Roberts' motion to continue. Roberts' second issue on appeal of whether the Trial Court erred in granting Tennier's motion for summary judgment as to Roberts' retaliation claim is pretermitted.

The Trial Court ruled prematurely on Tennier's motion for summary judgment. We, therefore, vacate the judgment of the Trial Court. On remand, Roberts may engage in the discovery for which he requested additional time in his motion to continue. Discovery, however, is not open-ended, and its scope and duration remain within the discretion of the Trial Court consistent with our Opinion.

## Conclusion

The judgment of the Trial Court is vacated, and this cause is remanded to the Trial Court for collection of the costs below and further proceedings consistent with this Opinion. The costs on appeal are assessed against the Appellee, Tennier Industries, Inc.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

-15-